**Walter SMITH, Plaintiff-Appellant,**

v.

**SINGER COMPANY,
Defendant-Appellee.**

**No. 79–4473.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1981.

Decided July 10, 1981.
Rehearing and Rehearing En Banc
Denied Oct. 6, 1981.

Alice M. Beasley, San Francisco, Cal. (argued), for plaintiff-appellant; Beatrice Rosenberg, Washington, D.C., Erickson, Beasley & Hewitt, San Francisco, Cal., on brief.

Jean C. Gaskill, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant-appellee.

Before MERRILL and CHOY, Circuit Judges, and HEMPHILL,* District Judge.

MERRILL, Circuit Judge:

Walter Smith has brought this action against his former employer, alleging that he was discharged in retaliation for having engaged in activities protected by the Civil Rights Act of 1964, in violation of 42 U.S.C. § 2000e–3(a).[1] He was employed as director of industrial relations for the Simulation Products Division of appellee Singer Company.

Singer, as a government contractor, was subject to the antidiscrimination provisions of Executive Order 11246 as amended by Executive Order 11375. These orders are implemented by the regulations enforced by the Office of Federal Contracts Compliance Programs (OFCCP). The Contracts Compliance Division of the Defense Contracts Administration Service (DCAS) is the government agency designated by OFCCP to monitor Singer's compliance with the provisions of the executive orders. The regulations require contractors to develop a written affirmative action program, 41 C.F.R. § 60–1.40, and to appoint an "executive of the contractor" to serve as "director or manager of company equal opportunity programs." 41 C.F.R. § 60–2.22(a). This latter section sets forth a seven-paragraph job description detailing the manner in which the director should implement the contractor's equal opportunity program.

It was this position that appellant occupied with Singer and from which he was fired. The job required appellant to develop affirmative action programs; assist in identifying problem areas; assist management in solving problems; design audit and reporting systems to measure the effectiveness of the programs; serve as liaison between the contractor and the enforcement agencies and between the contractor and minority, women's and community action groups; and keep management informed of the latest developments in equal opportunity enforcement.

Appellant asserts that he encountered lack of cooperation and commitment from the company in his efforts to accomplish needed reforms in the affirmative action program, and that reports to management to this effect were ignored. On February 13, 1976, he filed with DCAS a complaint against Singer alleging widespread discriminatory practices at Singer's Sunnyvale facility. The following month he filed a similar charge with the Equal Employment Opportunity Commission (EEOC).[2]

When the company learned that the DCAS charge had been filed and asked appellant who had complained, he denied knowledge of the identity of the charging party. For more than three months he concealed from Singer that he was the charging party. Throughout this period he actively participated with DCAS in the investigation of his charges. On one occasion he rented a room in a nearby motel and conducted a secret meeting of selected minority employees to solicit complaints of discrimination and to prepare the employees for the arrival of the government investigators.

In May, 1976, Singer received notice of the EEO charge, which named appellant as

* Honorable Robert W. Hemphill, Senior United States District Judge of the District of South Carolina, sitting by designation.

1. This section provides in part:
"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment * * * because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

2. Appellant has never contended that he himself suffered discrimination. The EEOC charge was filed on behalf of other employees.

the complainant. Appellant was relieved of his duties and asked to prepare a confidential memorandum, detailing Singer's asserted EEO deficiencies. In June, DCAS acknowledged to Singer that the complaint against Singer had been filed by appellant. On June 14, 1976, after appellant had completed the memo requested by Singer, he was fired on the ground that he had been found "seriously delinquent in performing the functions of equal employment co-ordinator."

■ The district court granted summary judgment for Singer, ruling that appellant had not been fired in retaliation for exercise of protected activity, but for failure to perform tasks fundamental to his position. The court relied specifically on appellant's denial of knowledge of the identity of the charging parties. It stated:

"[Smith's] job description leaves no doubt that he had to keep Singer management informed of all aspects of affirmative action compliance. This he undeniably failed to do after the filing of the complaint with DCAS. He denied knowledge of the identity of the complainant and affirmatively misled Singer as to his own role in the investigation. By doing so, he ceased to perform his duties as a Singer employee in charge of affirmative action, and he commenced work inconsistent with that position. His primary interest necessarily became substantiating his own complaints *against* Singer rather than working *with* Singer to pursue affirmative action and to overcome any real violations which could be found by the EEOC and the DCAS. Yet Smith continued without disclosure as the one person designated to act as a liaison with the DCAS. This was a manifest failure to perform the vital duties which his position required, and this failure justifies Singer's decision to dismiss him. Smith, like any other employee, cannot be allowed to use an antidiscrimination complaint to excuse a clearly inadequate job performance such as that demonstrated by the admitted facts."

We agree with the district court.

■ Appellant asserts that the district court erred by not inquiring into Singer's other stated reasons for discharging him to determine whether the reason cited by the court was mere pretext for a decision by Singer to discriminate against him. (Company officers had advanced as another principal reason for firing Smith that merely by filing charges with EEOC and DCAS he had placed himself in a position of intolerable conflict with his employer.) Appellant contends that he should have been granted a hearing to establish that Singer's reasons for firing him were pretextual, arguing that he would have been fired whether he denied authorship of the complaints or not. However, if we hypothesize that appellant did promptly admit authorship of the complaints and that he was fired simply for having filed them, we conclude that firing him even under these circumstances would have been justified.

By its terms, § 2000e–3(a) prevents an employer from discriminating against an employee for opposing unlawful employment practices or participating in proceedings relating to such practices. It thus invites an employee to take action against the employer and to invoke the assistance of outside agencies. This court has upheld the exercise of that statutory right. *See, e. g., Sias v. City Demonstration Agency,* 588 F.2d 692 (9th Cir. 1978) (statute violated where employee fired for "going over his superiors' heads" by writing letters to HUD complaining of denial of promotion and deficiency in minority hiring).

Where the only basis for terminating an employee is protected conduct, *cf. Hochstadt v. Worcester Foundation,* 545 F.2d 222 (1st Cir. 1976), and where that protected conduct is not inconsistent with the requirements of the employee's position, *see, e. g., Womack v. Munson,* 619 F.2d 1292 (8th Cir. 1980), and *Sias, supra,* it is not difficult to perceive a violation. Our case, however, differs in both these respects.

Voluntary rather than coerced compliance is the preferred method for achieving the goal of equal employment opportunities.

See generally Alexander v. Gardner-Denver Co., 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–1018, 39 L.Ed.2d 147 (1974). The executive orders and regulations here involved clearly reflect this policy by encouraging employers to devise their own affirmative action programs rather than have such programs thrust upon them. It was the very purpose of appellant's job to assist Singer in achieving such compliance; the job was held by him not as a private attorney general but as a company executive. The position was unique in that it required the occupant to act *on behalf of* his employer in an area where normally action against the employer and on behalf of the employees is protected activity. For this reason, our holding here is an extremely narrow one, applying only to the EEO officer appointed under the executive orders and regulations here involved.

The question is whether, under § 2000e–3(a), it is protected activity for this executive employee, occupying this position of responsibility, to take such action against the company he represents in support not of his own rights but of the perceived rights of those with whom it is his duty to deal on behalf of his company. If § 2000e–3(a) gives him the right to make himself an adversary of the company, then so long as he does not give nonprivileged cause for dismissal he is forever immune from discharge. Section 2000e–3(a) so construed renders wholly unworkable the program of voluntary compliance which appellant was employed to conduct. It was the same public interest in equal employment opportunities that brought forth both Title VII and the executive orders and regulations in question. Surely there must be room for them to operate harmoniously.

While § 2000e–3(a) is broadly stated, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), suggests that it need not be literally read under all circumstances. There, the Court quoted from *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), as follows:

"Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."

411 U.S. at 800, 93 S.Ct. at 1823. The *McDonnell Douglas* Court then continued:

"There are societal as well as personal interests on both sides of this equation. The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions."

*Id.* at 801, 93 S.Ct. at 1823.

By filing complaints against Singer because he disagreed with their choice of policies, appellant placed himself in a position squarely adversary to his company. In so doing he wholly disabled himself from continuing to represent the company's interests as its liaison with the enforcement agencies, and from continuing to work with Singer executives in the voluntary development of nondiscriminatory hiring programs.

Since appellant had thus rendered himself unable to fulfill the functions of his office, we hold that it was neither discrimination under § 2000e–3(a) nor retaliation against the exercise of protected activity for Singer to discharge him.[3]

Judgment affirmed.

---

3. Our recent case of *St. John v. Employment Development Dept.*, 642 F.2d 273 (9th Cir. 1981), is not contrary to our holding here. There, we did not reach the question whether, under circumstances comparable to those here, business necessity or the encouragement of voluntary compliance could render action justifiable that would otherwise be deemed discrim-

inatory. In that case, an employee of the EEO unit of the California Employment Development Department filed a complaint against her employer with EEOC. Her employer then transferred her to another job of the same pay and status in another department and she brought suit. The district court ruled that the action by her employer constituted a violation of § 2000e–3(a), and awarded her counsel fees. It declined, however, to order reinstatement to her old position. We affirmed.

The employer asserted that the transfer was not because a complaint had been filed, but was because a conflict of interest had emerged. We held that the conflict of interest was inseparable from the filing of the complaint and upheld the finding of the district court that the filing of the complaint was the real and only cause of the transfer. The employer next contended that the transfer was motivated by business interest. We stated:

"We need not reach that issue here, however, because the district court concluded that in the circumstances of this case the appearance of a conflict of interest did not justify the transfer. We see no reason to upset that determination."

642 F.2d at 275. We declined to consider whether the tendency to undermine Title VII's policy of encouraging voluntary compliance would justify the transfer to an equivalent position without EEOC contact, since this argument had not been advanced by the employer in the district court.

The district court refused to order reinstatement because of what it found to be a lack of clean hands on the part of the employee. It appeared that she had given independent and unprotected cause for transfer but that the employer had been unaware of this fact and it was not the reason for the transfer. We stated:

"The district court found that St. John 'had been sending statements, letters, and memos to Phil Kay, an investigator from the EEOC, based upon materials she acquired as a member of the EEO unit.' * * * Had the Department been aware of St. John's conduct, it could have transferred her."

Id. at 275.