Erik UNT, Plaintiff-Appellant,

v.

The **AEROSPACE CORPORATION**, United States Air Force, Space and Missile Systems Organization, and Air Force Systems Command, Defendants-Appellees.

No. 82–6087.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1985.

Decided July 19, 1985.

Ferguson, Circuit Judge, filed dissenting opinion.

Daniel C. Lavery, Tarzana, Cal., for plaintiff-appellant.

David Clark, Chase, Rotchford, Drukker & Bogust, Los Angeles, Cal., for defendants-appellees.

Before SNEED, POOLE and FERGUSON, Circuit Judges.

POOLE, Circuit Judge:

Erik Unt appeals the trial court's judgment in favor of appellee Aerospace Corporation (Aerospace) on his first claim under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e et seq. He also appeals the dismissal of his second claim for violation of the Privacy Act, 5 U.S.C. § 552a, against appellees Aerospace, the United States Air Force (Air Force), Space and Missile Systems Organization (SAMSO), and Air Force Systems Command. We affirm.

## FACTS

On December 12, 1972, appellant Erik Unt, a naturalized citizen of the United States born in Estonia, was employed as a Level 1 member of the Aerospace technical staff. Aerospace is a California nonprofit corporation formed for the purpose of providing systems engineering and technical direction to the Air Force missile and space program.

In August 1975, Unt filed an informal internal grievance against Aerospace, claiming discrimination based on national origin. This discrimination allegedly was manifested by appellant's July 1975 performance review and the refusal of Aerospace to promote him to a Level 2 management position. Additionally, Unt applied for, but did not receive, promotion to various other higher level management posi-

tions in 1975. Aerospace contended that appellant lacked the requisite qualifications, whereas Unt charged discriminatory conduct.

Aerospace investigated Unt's grievance and found the charges to be unsubstantiated. This finding was discussed with Unt, at which time he agreed to abandon his grievance and pursue his disagreements through the Aerospace "open door policy," under which upper level management made themselves available to employees to solve employee problems. Subsequently, on December 15, 1975, Unt was given a 3.6% raise, which was lower than the average Aerospace employee raise of 8.5%. Three days later, he wrote letters to various high level Air Force officers and administrators regarding his dispute with Aerospace management over his performance.

Aerospace management considered Unt's letters inappropriate because they tended to reduce the effectiveness and credibility of the performance of Aerospace personnel in the Air Force-Aerospace joint program office, to which Unt was assigned. Consequently, management met with Unt and discussed the letters in light of Unt's overall performance. Specific suggestions for improvement were provided. Aerospace also conducted an internal investigation of the allegations contained in Unt's letters, and no wrongdoing at Aerospace was revealed.

In February 1976, appellant was notified of his probationary transfer from the Aerospace Global Positioning System (GPS) program office to the Guidance and Control support division. He was also instructed in writing not to communicate with SAMSO concerning Aerospace business matters or attend joint program office meetings without approval. Approximately two months later, Unt reinstated his internal equal employment opportunity (EEO) grievance, and in September 1976, he filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) alleging that he had been subject to acts of reprisal for complaining about Aerospace management.

A final decision pursuant to the Aerospace grievance procedure was rendered in February 1977 denying Unt's grievance. In June of that same year, Unt wrote to General Morgan, Commander of SAMSO, calling attention to claimed violations of the law by Aerospace management. Unt's charges were again investigated and found to be unsubstantiated. Appellant was dismissed on July 7, 1977, for making false allegations of management misconduct to SAMSO and for willful violation of instructions and the conditions of his continued employment.

In September 1978, Unt received a Notice of Right to Sue from the EEOC. He filed this action on December 22, 1978. The court dismissed the Privacy Act claim against Aerospace on May 23, 1979, and against Frank Bane, SAMSO Contract Management Officer, on June 8, 1979. The federal defendants (Air Force, SAMSO, and Air Force Systems Command) were similarly dismissed on September 3, 1980. The remaining Title VII claims against Aerospace were tried by the bench. Unt's Title VII claim for national origin discrimination was dismissed at the close of his case in chief. This ruling was not appealed. At the conclusion of trial, the parties submitted written final argument and proposed Findings of Fact and Conclusions of Law on the remaining claim of retaliation. On November 4, 1982, the court issued its judgment in favor of Aerospace. Unt subsequently moved to amend the court's findings and conclusions, but this motion was denied as untimely. A timely notice of appeal was filed on December 3, 1982. We assume jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

On appeal, we are presented with two main issues. First, we must determine whether the district court's finding that appellant failed to establish his claim of retaliatory discrimination was clearly erroneous. Second, we must consider whether the district court abused its discretion in dismissing appellant's second cause of action under the Privacy Act against all defendants. Because we find the actions of

the district court appropriate in each case, we affirm.

## I. RETALIATORY DISCRIMINATION

■ Both Aerospace and Unt contend that we should apply the abuse of discretion standard in reviewing the district court decision that Unt was not the subject of retaliatory discrimination. The complex issue of retaliation, however, involves a factual inquiry into the employer's motivation and intent. Thus, Federal Rule of Civil Procedure 52(a) applies, and we will set aside the trial court's finding on retaliation only if it is clearly erroneous. *See Pullman-Standard v. Swint,* 456 U.S. 273, 288–90, 102 S.Ct. 1781, 1790–91, 72 L.Ed.2d 66 (1982) (intent to discriminate under § 703(h) of Title VII is a pure question of fact subject to the clearly erroneous standard); *Nicholson v. Board of Education Torrance Unified School Dist.,* 682 F.2d 858, 864 (9th Cir.1982) (employer's motivation for dismissing employee is a factual finding reviewed under clearly erroneous standard). Appellant challenges both the form and the substance of the trial court's findings. We will examine each challenge separately.

### A. Form of Findings

Appellant first argues that the findings of fact adopted by the district court are insufficient because they (1) fail to clearly indicate the facts supporting the court's ultimate legal conclusions, (2) are conclusory and vague, and (3) are almost identical to the proposed findings submitted by Aerospace a year earlier.

■ Rule 52(a) of the Federal Rules of Civil Procedure[1] requires the court, in all actions tried upon the facts without a jury, to "find the facts specially." The court must state findings sufficient to indicate the factual basis for its ultimate conclusion. *Kelley v. Everglades Drainage District,* 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943). "Statements conclu-

sory in nature are to be eschewed in favor of statements of the preliminary and basic facts on which the District Court relied. Otherwise, their findings are useless for appellate purposes." *Dalehite v. United States,* 346 U.S. 15, 24 n. 8, 73 S.Ct. 956, 962 n. 8, 97 L.Ed. 1427 (1953) (citation omitted). The findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *United States v. Alpine Land & Reservoir Co.,* 697 F.2d 851, 856 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983) (citations omitted); *Nicholson,* 682 F.2d at 866; *Lumbermen's Underwriting Alliance v. Can-Car, Inc.,* 645 F.2d 17, 18 (9th Cir.1980); *Fluor Corp. v. United States ex rel. Mosher Steel Co.,* 405 F.2d 823, 828 (9th Cir.), *cert. denied,* 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969).

■ The district court's findings certainly are not well done. They consist mainly of mere conclusions, preceded only by an unhelpful chronology of events. They do not articulate specific factual bases for the trial court's boilerplate determination that Aerospace's actions were justified by "legitimate business reasons." Nonetheless, while it is a close case, we do not believe we must remand for more detailed findings, for despite the factual shortcomings, the basis for the court's decision is clear. The record gives substantial and unequivocal support for the ultimate conclusion that Aerospace's actions against Unt were indeed justified, and thus that no retaliatory motive was involved.

■ Appellant also urges error in the trial court's adoption of findings very similar to those proposed by Aerospace. We have previously disapproved of the mechanical adoption of findings and conclusions prepared by the victorious party. *Lumber-*

---

1. Fed.R.Civ.P. 52(a) states in relevant part:
   In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *. Findings

of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

*men's Underwriting Alliance v. Can-Car, Inc.*, 645 F.2d at 18. The verbatim adoption of findings suggested by a party is not automatically objectionable, however, so long as those findings are supported by the record. *United States v. El Paso Natural Gas Company*, 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964) (citing *United States v. Crescent Amusement Co.*, 323 U.S. 173, 184–85, 65 S.Ct. 254, 259–60, 89 L.Ed. 160).

As the Supreme Court has aptly noted, we appreciate assistance from the district courts with our responsibility of reviewing the oftentimes extensive records in the cases before us. *See United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 615–16 n. 13, 94 S.Ct. 2856, 2866–67, 41 L.Ed.2d 978 (1974). When the trial court fails to provide us with detailed findings of fact, our burden of review is made that much more difficult. Because we apply the "clearly erroneous" standard when reviewing factual findings, we cannot affirm a district court whose findings are "skeletal" or conclusory unless the record, as here, clearly reflects the basis for the trial court's determinations. Although the district court's findings are lacking in particularity, we conclude that they are not so deficient as to prevent us from effectively exercising our role of review.

### B. Substance of Findings

Appellant argues that the findings of fact are not supported by the record, and thus, that they must be set aside as "clearly erroneous." In fact, he contends that the record supports his claim of retaliatory conduct by Aerospace in violation of Title VII,[2] both because of his opposition to unlawful employment practices and participation in procedures to remedy employment discrimination. The trial court disagreed, and so do we.

Seven actions taken by Aerospace are claimed to have been retaliatory: (1) the 1974–75 performance evaluation, (2) denial of promotions, (3) decrease in anticipated merit raise for 1975, (4) probationary transfer, (5) restricted communication with SAMSO, (6) discharge, and (7) Aerospace's failure to provide certain documents and a fair hearing. The record indicates, however, that these were legitimate nondiscriminatory actions justified by Unt's substandard performance at Aerospace.

**Performance evaluation.** The record supports the conclusion that Unt's performance review for 1974–75 was "an accurate and fair appraisal" of his performance. Unt himself so characterized the evaluation. That evaluation, prepared prior to the filing of any grievance by Unt, ranked him fourteenth of sixteen program office members. This poor performance was not based on his opposition to what he considered to be discriminatory employment practices, but on his history of conflict with associates and his inability to complete work assignments.

**Denial of Promotions.** The court could have reasonably concluded from the evidence that Unt's application for Manager of Avionics Systems Software was rejected because he lacked not only the requisite technical qualifications, but also the communication skills needed to function effectively as a manager. Consequently, there was no error in the trial court's finding that Aerospace's decision to hire another and more qualified applicant was based on legitimate business reasons. The record similarly supports the company's rejection of other applications by appellant for managerial positions during 1975.

**Merit Increase.** The trial court found that Aerospace was justified in awarding appellant a 3.6% merit increase in December 1975, rather than the average employee raise of 8.5%. The evidence supported the conclusion that the low increase was due to Unt's consistently inadequate, and even de-

---

**2.** Title VII of the Civil Rights Act of 1964, § 704(a), as codified in 42 U.S.C. § 2000e-3(a) (1972), provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this Title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

teriorating performance between the date the raise was recommended and the date that it was to become effective. Other employees showing substandard performance were also given raises less than originally projected. Thus, the court's finding on this issue of fact is not clearly erroneous.

**Transfer.** The trial court concluded that Unt's transfer to another division in February 1976 was justified by legitimate business reasons. This finding is supported by evidence of Unt's poor performance in the GPS Program Office. Aerospace management rated Unt's performance in the program office below average. This evaluation was reinforced by Unt's two unauthorized communications with the Air Force. Unt's writing to the Air Force violated a company policy that such written communication be approved by management. His supervisors believed that the violations jeopardized the very sensitive working relationship between the company and the Air Force. Testimony at trial supports the conclusion that appellant's filing of a grievance against Aerospace was not a factor in Unt's transfer to a different division.

**Restricted Communication.** About the time of his transfer, Unt was directed both orally and in writing not to communicate with SAMSO concerning business matters. The trial court found that this directive was justified by legitimate reasons. SAMSO is Aerospace's primary customer with whom Aerospace was attempting to improve its working relationship. There was testimony that Unt's communications with SAMSO negatively impacted upon the goal of improved relations. Thus, the trial court could reasonably have concluded that the decision to restrict appellant's communication with the Air Force was not based on retaliatory motives, but rather on a desire to avoid jeopardizing its business interests.

**Discharge.** The trial court found that Unt's June 16, 1977, letter to the Commander of SAMSO violated an explicit company directive, contained false allegations of misconduct by Aerospace management, and was the ground for appellant's subsequent termination. The record supports this conclusion. In his letter, Unt alleged no acts of discriminatory conduct by Aerospace, but merely that Aerospace management had made certain "phony charges" against him to destroy his career. He charged several violations of law by Aerospace management, and requested that SAMSO take action on his claims of mismanagement and assist him concerning certain invention rights. Unt did not inform or seek the approval of his supervisors before sending the communication.

■ Appellant claims that the object of his letter was to secure information substantiating his EEOC grievance or, in the alternative, that the letter constituted protected opposition to what he reasonably believed to be unlawful employment practices. Even if this were so, Aerospace articulated a legitimate, independent, and nondiscriminatory basis for the termination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 & 257, 101 S.Ct. 1089, 1093 & 1096, 67 L.Ed.2d 207 (1981); *E.E.O.C. v. Crown Zellerbach,* 720 F.2d 1008, 1012 (9th Cir.1983). An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals. *See Crown Zellerbach,* 720 F.2d at 1015; *Smith v. Singer Co.,* 650 F.2d 214, 217 (9th Cir. 1981); *Pendleton v. Rumsfeld,* 628 F.2d 102, 108 (D.C.Cir.1980); *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 230–34 (1st Cir. 1976).

■ Once Aerospace articulated a proper reason for disciplining Unt, appellant had the burden of proving that the stated reason was only a pretext for discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Crown Zellerbach,* 720 F.2d at 1012. The trial court determined that this burden was not satisfied, and the record supports that finding.

**Fair hearing and Documentation.** Finally, the trial court concluded that Unt's grievances were handled no differently than grievances filed by other employees,

and that the procedures employed in his case were justified by legitimate business reasons. The record is replete with evidence that supports this finding.

## C. Conclusion

The trial court determined that Aerospace did not discriminate or retaliate against Unt because of his opposition to unlawful employment practices or his participation in the grievance process. This factual conclusion is not clearly erroneous. It is apparent that Aerospace disciplined the appellant because of well documented performance deficiencies that were of legitimate concern to Aerospace management, and not because of any motive of reprisal for appellant's exercise of his Title VII rights. The trial court's findings of fact have provided us with a sufficient basis for determining the ground on which the court reached its decision, and we therefore affirm the judgment on this issue.

## II. PRIVACY ACT

■ Appellant's second argument is that the district court erred in dismissing his claim for violation of the Privacy Act, 5 U.S.C. § 552a, against Aerospace, the Air Force, SAMSO, and Air Force Systems Command. We review *de novo* a dismissal for failure to state a claim upon which relief can be granted by inquiring whether it is certain that no relief could be granted to appellants under any set of facts. *Preferred Communications, Inc. v. City of Los Angeles*, 754 F.2d 1396, 1399 (9th Cir. 1985); *St. Michael's Convalescent Hospital v. California*, 643 F.2d 1369, 1372 (9th Cir.1981).

Frank Bane, SAMSO Contract Management Officer, advised Aerospace on June 20, 1977, that Unt had written to SAMSO on June 16 regarding his disputes with Aerospace. Aerospace requested a copy of the letter, but Bane refused. Aerospace then made a formal request for the letter pursuant to the Freedom of Information Act, 5 U.S.C. § 552. The SAMSO legal department concluded that there was no ground for withholding the letter, and on July 1, 1977, it was delivered to Aerospace.

Appellant claims this violated section 552a(b) of the Privacy Act, which reads:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the written consent of, the individual to whom the record pertains * * *.

5 U.S.C. § 552a(b). This provision is subject to a number of exceptions, none of which apply here.

### A. Dismissal of Aerospace

The district court dismissed appellant's Privacy Act claim against Aerospace because it found that the Act creates a right of action only against a governmental entity. We agree.

The Privacy Act, § 552a(a)(1), defines the term "agency" by reference to 5 U.S.C. § 552(e), which provides:

For purposes of this section, the term "agency" * * * includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

■ The private right of civil action created by the Act is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the statute do not apply against private individuals, *Bruce v. United States*, 621 F.2d 914, 916 n. 2 (8th Cir.1980); state agencies, *St. Michael's Convalescent Hospital*, 643 F.2d at 1373 (9th Cir.1981); private entities, *Irwin Memorial Blood Bank of the San Francisco Medical Society v. American National Red Cross*, 640 F.2d 1051, 1057–58 (9th Cir.1981) (American National Red Cross) and *United States v. Miller*, 643 F.2d 713, 715 n. 1 (10th Cir. 1981) (national banks); or state and local officials, *Polchowski v. Gorris*, 714 F.2d 749, 752 (7th Cir.1983).

■ Aerospace is a private not-for-profit corporation which does business with the

United States Government. It is not an agency of the government within the definition of the Privacy Act. Nor does the mere fact that Aerospace receives funding and is regulated to some extent by the federal government bring it within the reaches of the Act.

In *St. Michael's Convalescent Hospital,* we held that federal regulation of state agencies administering the Medicaid program in California did not subject those agencies to the provisions of the Privacy Act, stating that:

> Federal funding reaches a countless number of activities of local and state governments. To assure that the federal funds are spent for the purposes for which they were intended, extensive federal regulations are promulgated and must be complied with. However, those regulations do not convert acts of local and state governmental bodies into federal governmental acts. *United States v. Orleans,* 425 U.S. 807, 816, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980). "[E]xtensive, detailed and virtually day-to-day supervision" by the federal government is needed before "agency" status could be said to attach.

643 F.2d at 1373–74 (citations omitted).

Even though Medi-Cal, the Medicaid program in California, received federal financial support and was highly regulated by the federal government, we concluded that the government did not exercise extensive supervision and control over the program sufficient to characterize the administrative bodies as federal agencies under the Privacy Act. *See Irwin Memorial Blood Bank,* 640 F.2d at 1057–58 (American National Red Cross, though a close ally of the United States, is not an "agency" for purposes of the Freedom of Information Act because its operations are not subject to substantial control or supervision). Similarly here, appellant has failed to demonstrate that the federal government's control over Aerospace, a private corporation, is sufficiently pervasive to confer governmental agency status upon it.

Appellant also contends that Aerospace violated § 552a(i)(3) of the Privacy Act, which provides:

> Any person who knowingly and willfully requests or obtains any record concerning an individual from an agency under false pretenses shall be guilty of a misdemeanor and fined not more than $5,000.00.

■ Appellant's attempt to state a claim against Aerospace under this provision of the Act is futile. This section provides for criminal penalties only, and generates no civil right of action. Moreover, the information that Aerospace obtained from SAMSO was about itself, not about "an individual," as required here.

### B. Dismissal of the Air Force, SAMSO, and Air Force Systems Command

On September 3, 1980, the trial court, without stating its reasons, also granted dismissal of appellant's Privacy Act claims against the Air Force, SAMSO, and Air Force Systems Command. We affirm.

■ The government appellees argue that Unt's letter was not a "record" contained in a "system of records" under 5 U.S.C. § 552a(b), and therefore, that the disclosure to Aerospace was proper. Because we find that the letter failed to satisfy the initial requirement that it be a "record" afforded protection within the meaning of the Act, we conclude that disclosure was not in violation of the statute.

A "record" is defined under § 552a(a)(4) as:

> ... any item, collection, or grouping of information *about an individual* that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

(emphasis added).

An "individual" is a "citizen of the United States or an alien lawfully admitted for

permanent residence." 5 U.S.C. § 552a(a)(2). Consequently, for appellant's letter to be subject to restrictive disclosure, it must reflect some quality or characteristic about him. *See Boyd v. Secretary of the Navy,* 709 F.2d 684, 686 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). The letter, however, is not about Unt. Rather, it is clearly about Aerospace, a private corporation, and not an individual within the meaning of the statute. The letter reflects directly on the performance by Aerospace of its contract with the government, and only indirectly on any quality or characteristic possessed by appellant. While Unt's letter mentions his difficulties with Aerospace management, this fact does not change the communication into an item about him. The subject is Aerospace and was "about" Aerospace. Because appellant has failed to demonstrate that his letter to SAMSO was a "record" pursuant to § 552a(a)(2) & (4), we conclude that the district court was correct in dismissing his Privacy Act claims against the government appellees.

## III. SANCTIONS FOR FRIVOLOUS APPEAL

Aerospace has requested an award of attorneys' fees and costs under Rule 38 of the Federal Rules of Appellate Procedure, which provides that:

> If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to appellee.

Aerospace claims that Unt's appeal is frivolous because (1) the Privacy Act explicitly creates a civil right of action against governmental agencies only, not against private corporations, and (2) appellant challenges findings of fact that are clearly supported by the record.

An appeal is frivolous when the arguments are entirely without merit and when the result is obvious. *N.L.R.B. v. Catalina Yachts,* 679 F.2d 180, 182 (9th Cir.1982); *McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981). While the disposition of Unt's Privacy Act claim against Aerospace is obvious because private entities are not subject to the Act, the resolution of his Title VII claim is not so clear. Consequently, we decline to award damages against appellant.

The judgment of the district court is AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

Unt wrote a letter to the Air Force in which he blew the whistle on his employer, The Aerospace Corp., a defense contractor. The Air Force received Unt's letter and promptly revealed it to the Aerospace Corp. without Unt's permission. Aerospace then fired him. The majority holds that despite the Air Force's undisputed ability to receive, maintain, retrieve, and reveal Unt's letter, which discloses that Unt is a whistleblower, to the very employer about which Unt was complaining, Unt's claim fails because the letter was not "about" Unt.

I dissent from this holding in Part II(B) of the opinion. I concur in Part I because it upholds the district court's finding of no discrimination, but I disagree with the dicta in that portion that might undermine federal protection for an employee's right to blow the whistle on his employer. I concur in Part II(A) of the opinion, but I disagree with its dicta concerning the nature of Unt's letter.

The plain language of the Act encompasses Unt's letter. Section 552a(b) provides: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." The Privacy Act's definition includes Unt's letter within its definitions of both "record" and "system of records." The majority did not discuss both parts of the statute because it held that the first requirement precluded coverage. Because I read the Act as encompassing Unt's letter, I address each of the Act's requirements—of a "record" and of a "system of records"—in turn.

## I.

The Privacy Act defines "record" as any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4). No one seriously disputes that Unt's letter is an "item," or that it contains his hand-signed name. Instead, the majority claims this item is not "about" Unt because it is "about" Aerospace. This interpretation is illogical, contrary to the legislative intent, and defies the case laws' consistent concern with the actual effect of a record on a person's employment when assessing that record's nature or subject.

The Privacy Act nowhere states that an item must be exclusively about the individual protected. Thus, the majority errs when it reasons that the letter is about Aerospace, and, therefore, it is not about Unt. The syllogism is incomplete because the Act fails to supply the necessary "exclusivity" premise. The majority's conclusion is invalid. The majority's holding that this letter is not an item will only prompt government agencies to maintain items with several bits of information about different subjects to evade this judicially imposed exclusivity requirement.

The legislative history also indicates that the Act encompasses an item like Unt's letter within its proscriptions against disclosure. Congress was concerned with the *nature* of the information conveyed by a record in assessing whether a record reflected adversely upon an individual:

> The reference to personal characteristics does not exclude a file that contains only names and is headed by a general label for a category of records. If the heading or the *nature* of the file represents a judgment on the individual or a subjective view, then that file would be subject to the bill.... Thus it could cover a list which contained names only but which, *by its nature, conveyed something detrimental or threatening to the reputation, rights, benefits or privileges or qualification* of the individual simply by reason of being listed on it.

P.L. 93–579, 1974 U.S.Code Cong. & Ad. News 6916, 6993 (emphasis supplied). Unt's letter acquired such a detrimental nature upon disclosure to his employer—on whom Unt blew the whistle. It was, therefore, about Unt in a very real and threatening sense, although it turned out to be also about Aerospace in an immaterial sense.

The legislative history also describes broadly the records covered by the Act:

> Rather than focus on a single record or subject file, the Committee has adopted an approach focused on the total information system which includes all phases of information collection, storage, handling, processing dessimination [sic] and transfer.... The bill thus is directed to the overall programs and policies of executive branch departments and agencies including the design, development, and management of an information system, *as well as to the maintenance of one particular file on an individual, or the gathering of information on one data subject.*

*Id.* (emphasis supplied). The Act covers all aspects of information management, from the systems level down to the single data subject. Its coverage is therefore not limited to items on single subjects, as the majority holds. The Act was intended to cover items such as Unt's letter, even though they cover two data subjects.[1]

## II.

The Act also defines "system of records":

---

1. Two other federal "whistleblowing" statutes support this conclusion about legislative intent. These two statutes, 10 U.S.C. § 1587 and 5 U.S.C. § 2302, protect federally employed whistleblowers from adverse personnel action and thus show a broad legislative desire to protect those who blow the whistle on illegal actions that jeopardize the government's integrity.

[T]he term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. §§ 552a(a)(5).

Unt's letter and the information it contained—that he turned in his defense employer—was retrievable; it was retrieved and disclosed. Unt's letter was thus a record within a system of records, despite the absence of computer age technology in its filing, retrieval and disclosure.

Our circuit has not yet addressed the question of what constitutes a "record which is contained in a system of records," but several other courts have. Their decisions about whether the claims fall within section 552a are based on concerns similar to those expressed by the legislature. The courts have shown concern with the nature of the record and the adverse effect of disclosure, particularly on employment decisions, in determining whether the record warranted the Act's protections. These decisions concerning the "system of records" requirement thus also conflict with the majority's failure to assess whether this record was "about" Unt by noting the real effect that this letter's disclosure had upon Unt.

In *Chapman v. NASA*, 682 F.2d 526 (5th Cir.1982), *cert. denied*, —— U.S. ——, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984), NASA discharged Chapman. Chapman's immediate supervisor kept notes about Chapman, his job performance, and summaries of meetings, which were ultimately placed in Chapman's administrative file. The court held that these memos were subject to the Privacy Act. In distinguishing between private memory-refreshers, which are not subject to the Act, and records, which are, the court held: "[W]hen notes bear negatively on a worker's employment status or situation, they must be handled in a manner consistent with the letter and spirit of the Privacy Act." 682 F.2d at 529. The notes on Chapman, like the letter from Unt,

"played a part in [his] discharge." 682 F.2d at 527. Thus,

When Phinney tendered his personal notes to Hall, for use by NASA in proceedings looking to the discharge of Chapman, the private aspect of the notes evanesced and they became subject to the requirements of the Privacy Act.

682 F.2d at 529. The evil of disclosure of a communication originally intended to be private which then adversely affects the complainant's employment, upon which the *Chapman* court based its decision, is present in Unt's case. His letter, like the Chapman notes, falls within the Privacy Act's protections.

In *Olberding v. United States Department of Defense, Department of the Army*, 709 F.2d 621 (8th Cir.1983), army officers disclosed that Olberding had undergone psychiatric testing and that no disorders or illness had been found. The court found no violation of the Privacy Act, because the disclosed information was not disclosure "resulting from *a retrieval* of the information initially and directly from the record contained in the system of records." 709 F.2d at 622 (emphasis supplied). Rather, the information was retrieved from "the personal knowledge of the individual." *Id.* Thus, the court's emphasis in denying an actionable Privacy Act claim was upon the *retrievability*. Unt's letter was physically retrieved from the briefcase in which it was carried, and turned over to The Aerospace Corp. The evil of retrieval from stored files, with which the *Olberding* court expressed concern, is thus present in Unt's case. *Cf. King v. Califano*, 471 F.Supp. 180 (D.D.C. 1979) (personal opinion disclosed from individual's memory not a disclosure of a record within meaning of Privacy Act); *Doyle v. Behan*, 670 F.2d 535 (5th Cir.1982) (same).

In *Boyd v. Secretary of the Navy*, 709 F.2d 684 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), the Navy employed Boyd. Boyd claimed that the Navy refused him access to his own files, destroyed memoranda to

which he should have been granted access, and failed to maintain an accurate and timely record about him. The court held that the memoranda were records because they reflected poorly on some characteristic of Boyd. They were not, however, maintained within a system of records, in part because:

> The memorandum in question ... was not used in making any decisions concerning Boyd's employment status. As such, it was merely a memory aid of the superiors who attended the meeting with Boyd.

*Id.* at 686–87. Unt alleges that the letter was used to make a decision about his employment status. The evil of using officially maintained information to affect adversely employment decisions, with which the *Boyd* court expressed concern, is therefore also present in Unt's case.

Several district court cases that have declined to characterize written material as records within a system of records have turned on factors not present in Unt's claim. *See Savarese v. United States Department of Health*, 479 F.Supp. 304, 307 (N.D.Ga.1979) (disclosed information was not retrievable by name or name-related identifier; Unt's letter, though only in a briefcase, was retrieved because it bore his name), *aff'd*, 620 F.2d 298 (5th Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *Smiertka v. United States Department of Treasury*, 447 F.Supp. 221 (D.D.C.1978) (disclosed information not retrievable by plaintiff's name, but "by someone else's identifier, in particular the name of the agency investigator who prepared them"), *vacated and remanded on other grounds*, 604 F.2d 698 (D.C.Cir.1979). They are therefore unpersuasive in Unt's case.

Admittedly, a federal regulation indicates that Unt's claim might not be actionable. That regulation, however, is based on reasons entirely different from those of the majority. That regulation also conflicts with the Act's language and purpose. Thirty-two C.F.R. § 806b.3(p) defines "system of records" as:

> Any group of records from which personal information is retrieved by the name of an individual or by some personal identifier, such as the individual's Social Security Number (SSN). If such retrieval is possible but not actually done, the group does not constitute a system of records.

To the extent that this regulation undermines legislative and judicial concern with government recordkeeping of all kinds—manual and computerized, with the nature and adverse employment consequences of disclosure, and with the values of government responsibility and individual privacy, I must disagree with its definition of a system of records. The actual and threatened harm resulting from disclosure of personal information does not change with the method of retrieval.

CONCLUSION

The lesson of this regulation is: misfile personal data. The lesson of the majority's opinion is: file personal data with other data. Then, retrieving the data from wherever they were misfiled, left unfiled, or filed with other data would implicate no privacy values.

The Act itself, however, is far broader. In order to succeed under the 5 U.S.C. § 522a(b), Unt's letter must be a "record which is contained in a system of records." The legislature that adopted this phrase and the cases that have considered the phrase show that in determining whether a bit of information is a "record which is contained in a system of records," it is proper to look at the nature of the record, its ability to be retrieved, and the adverse effects of disclosure—particularly upon employment decisions. Under these tests, Unt's letter deserves the Privacy Act's protection.