FILED

MAY 30 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-12-1268-KiClD |
| PATRICK ROY LEWIS, | Bk. No.   1:11-13919-AA |
| Debtor. | |
| KALLMAN & COMPANY LLP, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| DAVID K. GOTTLIEB, Chapter 7 Trustee; JUDITH LEWIS, | |
| Appellees. | |

Argued and Submitted on May 16, 2013,
at Pasadena, California

Filed - May 30, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Alan M. Ahart, Bankruptcy Judge, Presiding

Appearances:    Michael Sanford Kogan, Esq. of Kogan Law Firm, APC, appeared for appellant, Kallman & Company, LLP; Simon Jonathan Dunstan, Esq. of Hughes & Dunstan, LLP appeared for appellee, Judith Lewis; Lawrence D. Simons, Esq. of the Law Offices of Larry D. Simons appeared for appellee, David K. Gottlieb, Chapter 7 Trustee.

Before:   KIRSCHER, CLEMENT[2] and DUNN, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Hon. Fredrick E. Clement, Bankruptcy Judge for the Eastern District of California, sitting by designation.

Appellant, Kallman & Company LLP ("K & C"), appeals an order from the bankruptcy court approving the sale of a claim to appellee, Judith Lewis ("Judith"), which the court had previously approved to be sold to K & C. We VACATE and REMAND for lack of adequate findings under Rule 7052.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Prior to the bankruptcy, debtor Patrick Lewis ("Patrick") was employed by K & C. Judith is Patrick's non-debtor wife. They have been married since 1992. In August 2010, Patrick filed a complaint against K & C in state court alleging claims for breach of contract, breach of fiduciary duty, failure to pay wages and accounting (the "Claim"). K & C filed a cross-complaint in response.

Before any judgment had been determined on the Claim by the state court, Patrick filed his chapter 7 bankruptcy case on March 31, 2011. David K. Gottlieb ("Trustee") was appointed as chapter 7 trustee to administer the case, including Patrick's interest in the Claim, which was now part of his bankruptcy estate. In Patrick's Schedule B, he identified the Claim, which sought damages in excess of $200,000, as having a current value of $20,000. Patrick did not designate how ownership in the Claim was held - i.e., whether it belonged to him or to the marital community.

At some point, counsel for K & C approached Trustee about purchasing the estate's interest in the Claim. K & C and Trustee

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

engaged in negotiations and ultimately reached an agreement whereby K & C would purchase the Claim for $40,000. The agreement was reduced to writing and executed by the parties in January 2012. Pertinent provisions of the Agreement state:

> 1.1 Closing Date. The closing of the purchase and sale provided herein (the "Closing Date"), shall take place upon entry of a final, non-appealable order from the United States Bankruptcy Court, Central District of California, or other court of competent jurisdiction, approving this Agreement.
>
> 2.1 Acquisition of Assets. Subject to the terms and conditions of this Agreement, and based on the representations and warranties hereinafter set forth, at the Closing, Seller shall sell, transfer, convey, assign and deliver to Buyer, and Buyer shall acquire and purchase from Seller, certain property, properties and rights of Seller associated therewith, consisting of Seller's right, title and interest in and to the Complaint and the following (the "Property")
>
> > (ii) The Trustee agrees to immediately relinquish all rights upon execution of this Agreement, but shall retain a security interest in the Complaint to the extent of any outstanding payments that currently exist under this Agreement only.
>
> 6.1 Grounds for Termination. This Agreement may be terminated at any time prior to the Closing Date:
>
> > c. by Seller by written notice thereof to Buyer if any of the conditions set forth herein have been incapable of fulfillment by or before the Closing Date, and shall not have been waived by Seller.
>
> 7.4 Representations and Warranties.
>
> > f. Each party hereto agrees that such party will not take any action which would interfere with the performance of this Agreement by any other party hereto or which would adversely affect any of the rights provided for herein[.]

According to the Agreement, the sale of the Claim was subject to overbid of at least $10,000 over K & C's offer of $40,000. The parties further agreed to mutual releases of any past, present or

-3-

future claims against one another.

Trustee moved to approve the sale of the Claim to K & C under § 363(b). The K & C sale motion was heard on February 22, 2012. Patrick, Judith and Patrick's bankruptcy counsel, Simon Dunstan, Esq. ("Dunstan"), attended. Patrick and Dunstan opposed the sale, but did not qualify as overbidders. Based on the pleadings filed, argument of counsel and lack of any overbids, the bankruptcy court orally approved the sale of the Claim to K & C.

A week later on February 29, 2012, Dunstan drafted a letter to Trustee informing him that Judith wished to exercise her rights under § 363(I)[4] to purchase the Claim on the same terms reached with K & C for $40,000.

Meanwhile, the bankruptcy court entered an order approving the sale of the Claim to K & C on March 8, 2012 ("K & C Sale Order").

On March 22, 2012, fourteen days after entry of the K & C Sale Order, Patrick filed a motion to reconsider the sale, thereby tolling the appeal time of the K & C Sale Order.

On that same date, Trustee filed a motion to approve a stipulation to sell the estate's interest in the Claim to Judith under § 363(I) ("Judith Sale Motion"). According to Trustee, after researching and receiving evidence that the funds Judith was

[4] Section 363(i) provides:

Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated (emphasis added).

-4-

tendering to purchase the Claim were not estate property, he and Judith executed a stipulation on March 21, 2012, whereby he would sell the Claim to Judith for $40,000.[5] Trustee asserted that the Claim was presumed to be community property because it arose during the marriage. Therefore, argued Trustee, selling it to Judith was proper because the sale had not yet been consummated with K & C at the time she exercised her right of first refusal under § 363(I).

K & C opposed the Judith Sale Motion, contending that the sale to K & C had already been consummated and that Judith lacked any community property interest in the Claim. Specifically, K & C contended that the prior sale had been "consummated" on February 22 because the bankruptcy court held the sale hearing, Patrick and Judith were represented by counsel at the hearing and given an opportunity to overbid, Patrick's bid had been rejected, Judith expressed no interest in purchasing the Claim at that time, and the court orally approved the sale of the Claim to K & C. K & C further argued that Section 2.1(ii) of the Agreement expressly transferred the estate's interest in the Claim "upon execution" of the Agreement, which was on January 30, 2012. Therefore, according to K & C, because the estate's rights to the Claim were transferred to K & C on January 30, Trustee had nothing left to sell Judith (other than his security interest) on March 21, 2012. If the court disagreed with these earlier "consummation" dates, K & C alternatively argued that the sale was

---

[5] The source of the funds to purchase the Claim was Bolero Home Decor, Inc. Patrick and Judith represented that they had no ownership or other pecuniary interest in that entity.

consummated upon entry of the K & C Sale Order on March 8, 2012.

K & C also argued that Judith lacked standing to purchase the Claim under § 363(I) because it was not identified as community property in Patrick's Schedule B, which was signed under the penalty of perjury, and Trustee had failed to demonstrate otherwise. Finally, K & C argued that because the sale to Judith did not (and could not) release Trustee and the bankruptcy estate from liability on K & C's cross-claims, as did the Agreement, K & C's offer was greater in amount than Judith's, and so the sale of the Claim to her should not be approved.

In reply, Trustee disputed K & C's contention that the sale had already been consummated. In his opinion, no sale had been consummated because no monies had been tendered. Trustee had previously informed the parties that he would not accept any funds until the bankruptcy court had entered an order either approving or denying the sale to Judith.

In her reply to K & C's opposition, Judith argued that her mere presence at the sale hearing was not a waiver of her rights under § 363(I) because she was not represented by Dunstan at that time, and she had no notice that her rights might be impacted. Contrary to K & C's position, Judith argued that she was not required to bid at the auction, or assert her intention to do so, because that would have been tantamount to a co-owner bidding up the price to her own detriment. Judith contended that § 363(I) allowed her to wait until the marketplace determined the Claim's value and then exercise her right to acquire it at that price. Judith disputed K & C's contention that the Claim was transferred and the sale was consummated "upon execution" of the Agreement on

-6-

January 30, 2012. Under the Agreement, nothing could be transferred until the "Closing Date," which was not until a final, non-appealable order had been entered by the bankruptcy court, and, because of Patrick's timely motion to reconsider, the K & C Sale Order was not yet final. Alternatively, argued Judith, Trustee had a contractual right to terminate the Agreement based on Section 6.1(c).

Judith further argued that despite Patrick's omission in his Schedule B, which was not binding on her, the Claim was community property because she and Patrick had been married since 1992, the Claim against K & C arose during their marriage, and she had never signed an agreement giving up any interest in property, community or otherwise.

Finally, Judith rejected K & C's argument that its offer was superior to hers because of K & C's release of its cross-claims against the bankruptcy estate. The Agreement allowed for overbids from third parties without a release, and it was not clear as to whether K & C was actually releasing the bankruptcy estate from liability. Moreover, K & C's unsecured cross-claims had no value in any event because the IRS held a priority claim for $101,747, which would consume whatever funds were available for distribution to Patrick's unsecured creditors.

The bankruptcy court held a hearing on the Judith Sale Motion and Patrick's reconsideration motion on April 18, 2012. At the start, the parties confirmed that they had reviewed the court's tentative rulings on the two matters.[6] The parties agreed that

_____

[6] The parties did not include a copy of the tentative ruling
(continued...)

-7-

they could not locate any case law determining when a sale is "consummated" for purposes of § 363(I). Nonetheless, they were in complete disagreement about when the sale of the Claim to K & C was consummated, whether it was upon execution of the Agreement, entry of the K & C Sale Order, or when the funds exchanged hands.

After hearing argument from the parties, the bankruptcy court asked Trustee's counsel to explain what would happen to K & C's counterclaim if the court approved the sale of the Claim to Judith. Counsel replied that Patrick would presumably return to state court to litigate his claims against K & C, and K & C would retain its rights to defend itself and assert its counterclaim. Upon that representation, the bankruptcy court approved the Judith Sale Motion:

> Okay. So I'm going to grant the motion on that basis. My tentative ruling is adopted and amended accordingly.

Hr'g Tr. (Apr. 18, 2012) 18:6-8. Based on that ruling, the bankruptcy court denied Patrick's reconsideration motion.

The bankruptcy court entered an order denying Patrick's motion to reconsider on May 8, 2012. That order was not appealed. Thus, the K & C Sale Order became final on May 23, 2012.

The bankruptcy court entered an order approving the Judith Sale Motion under § 363(I) on May 11, 2012 ("Judith Sale Order").

---

[6](...continued) in the record, but we took the liberty of retrieving it from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989)(appellate court can take judicial notice of documents filed with the bankruptcy court). That ruling states in its entirety:

> Grant the Motion and authorize sale of the Claim to Judith Lewis per the Stipulated Agreement.

-8-

The Judith Sale Order states that the court "made its findings of fact and conclusions of law as stated on the record" pursuant to Rule 7052. This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(N). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court make sufficient findings of fact and conclusions of law to allow for meaningful review of this appeal?

## IV. STANDARD OF REVIEW

Sales under § 363 are reviewed for abuse of discretion. Moldo v. Clark (In re Clark), 266 B.R. 163, 168 (9th Cir. BAP 1998). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**The bankruptcy court did not make sufficient findings of fact and conclusions of law to support approval of the Judith Sale Motion.**

### A. Rules 9014 and 7052

Because it was opposed, the Judith Sale Motion was a contested matter subject to Rule 9014. See Rule 6004(b). As a contested matter, the bankruptcy court was required to make findings of fact, either orally on the record or in a written decision. See Rule 9014(c) (incorporating Rule 7052, which in turn incorporates Civil Rule 52); Harris v. U.S. Trustee (In re Harris), 279 B.R. 254, 260 (9th Cir. BAP 2002)(in contested matters the bankruptcy court is required to make findings on

-9-

disputed issues of material fact). Specifically, in an action tried on the facts without a jury, "the court must find the facts specially and state its conclusions of law separately." Civil Rule 52(a)(1), incorporated by Rule 7052. These findings must be sufficient to indicate the factual basis for the court's ultimate conclusion. Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985). The findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision. Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 815 (9th Cir. 2003); Unt, 765 F.2d at 1444; Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919 (9th Cir. BAP 2011).

**B.   Analysis**

Findings of fact and conclusions of law are essential to appellate review of this matter. In the absence of complete findings, we may vacate a judgment and remand to the bankruptcy court to make the required findings. See United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005). However, even when a bankruptcy court does not make formal findings, we may conduct appellate review "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." In re Veal, 450 B.R. at 919-20 (citations omitted).

The Judith Sale Order, which was drafted by counsel for Trustee, indicates that the bankruptcy court stated its findings of fact and conclusions of law on the record. Review of the transcript from the sale hearing reflects that the bankruptcy

-10-

court did not articulate any findings or conclusions on the record, other than implying that the Judith Sale Motion was approved on the basis that both parties could pursue their claims in state court. Whether that finding was even essential to a sale under § 363(I) is debatable. Further, despite the bankruptcy court's indication at the sale hearing that it had made findings in its tentative ruling, a review of that tentative ruling reflects otherwise.

The issues of when the sale to K & C was "consummated" and whether the Claim was "community property" were disputed issues of material fact essential to a ruling on the sale of the Claim to Judith under § 363(I). The bankruptcy court made no specific findings on either of these issues. As a result, we have no basis for evaluating whether it abused its discretion in approving the sale of the Claim to Judith. Accordingly, we must VACATE the Judith Sale Order and REMAND.

## VI. CONCLUSION

Because the bankruptcy court did not make sufficient findings to support the sale of the Claim to Judith under § 363(I), we VACATE the Judith Sale Order and REMAND with instructions that the bankruptcy court enter the required findings of fact and conclusions of law in accordance with Rule 7052, and further determine whether the Judith Sale Order supersedes the K & C Sale Order.