John SIMEONOFF, Plaintiff–Appellant,

v.

Todd HINER and Clare Hiner, in personam and the F/V SAGA, Defendants–Appellees.

No. 99–35910

United States Court of Appeals, Ninth Circuit.

Submitted March 7, 2001*

Filed May 8, 2001

884

Mark A. Sandberg, Michael D. Corey, Sandberg, Wuestenfeld & Corey, Anchorage, Alaska, for the plaintiff-appellant.

Kenneth G. Schoolcraft, Cheryl L. Graves, Le Gros, Buchanan & Paul, Anchorage, Alaska, for the defendants-appellees.

Before: PREGERSON, THOMAS and RONALD M. GOULD, Circuit Judges.

RONALD M. GOULD, Circuit Judge:

John Simeonoff ("Simeonoff") injured his foot while crab fishing on a commercial vessel, the F/V SAGA ("SAGA"). Simeonoff brought a claim pursuant to the Jones Act, 46 U.S.C. § 688 et seq., and general maritime law against the SAGA and shipowners, Clare and Todd Hiner ("Hiners") claiming negligence and unseaworthiness. After a bench trial, the district court found the SAGA and the Hiners ("Appellees") seventy percent negligent and Simeonoff thirty percent negligent. The court found $163,500 total damages and, reducing that by thirty percent, awarded $114,450 to Simeonoff. Simeonoff appeals arguing that: (1) the district court clearly erred by finding Simeonoff contributorily negligent; (2) the district court erred by issuing unreviewable damages findings; (3) the district court clearly erred by awarding insufficient non-economic damages; and (4) the district court erred by failing to award prejudgment interest. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part because we hold that (1) the economic damages findings are sufficiently detailed for appellate review; and (2) the non-economic damage awards are sufficient. We reverse and remand in part because we hold that Simeonoff was not contributorily negligent for responding to a cry for help. We also remand to permit

the district court to make findings relating to its denial of prejudgment interest.

## FACTS

Simeonoff began salmon fishing commercially at age 11 and crab fishing at 16. At the time of the accident, he fished primarily for salmon and crab. When the accident occurred, Simeonoff was the "stack man" on the SAGA, but "[h]e could do basically any job on the boat." Simeonoff was also an experienced ship engineer, and he assisted the SAGA engineer,[1] Jed Miller ("Miller") at Miller's request.

On February 9, 1996, when he was 26 years old, Simeonoff was injured aboard the SAGA when his foot was crushed by a pot launcher ("launcher").[2] While crab fishing, Simeonoff discovered a leaking crack in a fitting on a hydraulic pipe ("hose" or "pipe") that raises and lowers the launcher. Simeonoff reported the leak to engineer Miller. Miller reported the problem to the ship's captain, Dennis Black ("Black"), and went below to make a replacement hose. The crew put the launcher in the "up" position, and Black turned off the hydraulics. Simeonoff left the launcher to work at the bait station. Miller returned and started to remove corrosion-blocker tape called "densil tape" from the hose. Miller then called to the crew for assistance. Immediately, Simeonoff responded to Miller's call for help to remove the tape. As Simeonoff went under the launcher, the hose gave, the fitting gave, and the launcher fell on him causing his serious injuries.

The launcher can be supported by hooking it to the ship's crane. The crane uses the same hydraulic system as the launcher but has a mechanical brake that can support the launcher. Had it been attached to the launcher, the crane would have prevented the accident. Both Miller and Simeonoff were experienced with hydraulic repairs and knew of the need to secure the launcher before repairing it. Miller failed to ensure the launcher was supported before directing Simeonoff to remove the tape. Simeonoff also failed to ensure the launcher had been supported before following Miller's direction.[3]

After the accident, the crew used the crane to lift the launcher off of Simeonoff, who was thereafter transferred to a boat and taken ashore. Simeonoff was examined at a clinic and then flown to a hospital in Anchorage. Simeonoff underwent two surgeries on his foot. The first occurred after the accident and involved open reduction and internal fixation surgery (followed by an April 1996 hardware removal). The

---

1. The ship's engineer fixes mechanical problems and is responsible for assuring that the repairs to the pot launcher's hydraulic system are carried out safely.

2. A launcher is a 1500 pound hydraulic machine used to move crab pots from the ship's deck to the ocean and back.

3. Simeonoff testified as follows:

 Q: Was there any reason that you couldn't have said before the hydraulics were turned off let's just hook up the picking boom or the crane before we turn the hydraulics off?
 A: No.
 Q: ... But ... you know that ... either the crane or the picking boom was going to have to be hooked up to the pot launcher for this repair, right?
 A: Yes, I should have known.
 Q: Okay. And you should have known ... that before you crawled underneath there, right?
 A: Yes.
 Q: And you should have known that the crane or the picking boom should have been hooked up before you crawl underneath the pot launcher to remove the densile tape, right?
 A: Yes.
 Q: Okay. And that was a lapse on your part, correct?
 A: Yeah.

second occurred in November 1996, during which a joint in his foot was fused (followed by a January 1999 removal of a screw). Simeonoff was released for work on a trial basis in March 1997 and did not visit the doctor again until January 1999.

## PROCEDURAL HISTORY

After a bench trial, the court concluded that Miller's negligence for repairing the launcher without first supporting it rendered the SAGA unseaworthy at the time Miller directed Simeonoff to go beneath the launcher. The court concluded that Miller's negligence and the SAGA's resulting unseaworthiness caused Simeonoff's injury. The court further found that, despite the maritime expectations that seamen follow orders, Simeonoff was negligent for going under the launcher without first assuring himself that the launcher was secured by the crane. The court also found that Simeonoff's comparative negligence reduced his recovery of damages caused by the SAGA's unseaworthiness. The court further found that the SAGA's unseaworthiness was seventy percent responsible for Simeonoff's injuries, and Simeonoff was thirty percent responsible for his own injury. The court found the reasonable value of Simeonoff's past lost wages, reduced for taxes, was $6,500, and found defendant responsible for seventy percent: $4,550. The court found the reasonable value of Simeonoff's future lost wages, reduced to present value and adjusted for taxes, was $130,000, and found defendant responsible for seventy percent: $91,000. The court found the value of Simeonoff's past pain and suffering and loss of enjoyment of life to be reasonably measured at $20,000, with defendant responsible for seventy percent: $14,000. The court reasonably valued Simeonoff's future pain and suffering and loss of enjoyment of life at $7,000, with defendant responsible for seventy percent: $4,900.

In total, the court awarded judgment and damages of $114,450 to Simeonoff.

Simeonoff moved the court to amend its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(b). The district court denied the motion.

Appellees had offered a settlement that Simeonoff did not accept. Because it was greater than the court's award, the court subsequently entered a modified judgment awarding costs to the Hiners as prevailing parties.

Simeonoff appeals the damage award.

## DISCUSSION

### Comparative negligence

Simeonoff argues that the district court erred by reducing his damage award by thirty percent because he was not negligent in responding to Miller's call for help. We agree.

■ We review a judgment of a trial court, sitting without a jury in admiralty, for clear error. *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Vance v. Am. Hawaii Cruises, Inc.*, 789 F.2d 790, 793 (9th Cir.1986).

■ We have held that in admiralty cases assumption of risk is not a defense and cannot be applied to bar or reduce damages sustained by seamen. *DuBose v. Matson Navigation Co.*, 403 F.2d 875, 877 (9th Cir.1968) ("assumption of risk has no place in maritime law"). But on the other hand "in maritime personal injury actions under the Jones Act ... courts have long applied the concept of comparative fault." *Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co.*, 565 F.2d 1129, 1138 (9th Cir.1977). Contributory negligence is applicable to mitigate damages when a seaman is injured if "alternative courses of

action are available to the injured party, and he chooses the unreasonable course." *DuBose,* 403 F.2d at 878 (citing cases from the First, Second, Fourth and Fifth Circuits); *Socony–Vacuum Oil Co. v. Smith,* 305 U.S. 424, 432–33, 59 S.Ct. 262, 83 L.Ed. 265 (1939) (contributory negligence is proper if a seaman "knowingly failed to choose an available safe method of doing his [or her] work," such as making "use of a defective appliance knowing that a safe one is available"). Contributory negligence is measured by what a reasonable person would have done under similar circumstances. *See Am. President Lines, Ltd. v. Welch,* 377 F.2d 501, 504–05 (9th Cir.1967).

▮ Courts apply the doctrine of comparative fault to encourage reasonable care by seamen while at the same time placing a high degree of responsibility on owners for the seaworthiness and safety of their vessels and appliances. *Socony,* 305 U.S. at 432–433, 59 S.Ct. 262. The general rule permitting application of the doctrine of contributory negligence is well settled, and here Simeonoff may have had options other than going below the launcher as he did. Nonetheless, Simeonoff asks us to consider whether an exception to the doctrine of comparative negligence exists when a seaman is injured while following orders.

▮ The Fifth Circuit has held that "a seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger." *Williams v. Brasea, Inc.,* 497 F.2d 67, 73 (5th Cir.1974) (citing *Darlington v. National Bulk Carriers,* 157 F.2d 817 (2d Cir.1946)). In *Williams,* the district court found a seaman negligent for failing to make a reasonable effort to ensure that his supervisor (who was injured) was clear from danger before following the same supervisor's order to cut power on

some machinery. *Id.* For the seaman to exercise the care found lacking by the district court, the seaman "would have had to descend the platform, walk to the side of the cathead to observe [the supervisor's] hands, then return to the platform in order to cut on the power; and all this coming after receipt of a direct order from [the supervisor] to turn the power on." *Id.* The court then concluded that "[a] seaman's duty to obey orders from his immediate superior overrides the postulate that the seaman must delay execution of the order until he makes a reasonable effort to be sure that following the order will not injure the superior who gave the order." *Id.* The Fifth Circuit thus identified circumstances where the reasoning behind contributory negligence—the balance between encouraging reasonable care of seamen and requiring a high degree of seaworthiness and safety from ship owners—has no place. As the court explained in *Williams,* it is unreasonable to require a seamen who has received an order to delay execution of the order until he or she has made a reasonable effort to be sure that following the order will not cause injury.

The Eighth Circuit in *Alholm v. American Steamship Co.,* 144 F.3d 1172, 1179 (8th Cir.1998), also acknowledged the obstacles faced by seamen given a potentially dangerous order and devised a rule whereby the recognition of comparative negligence for following an order depends on whether the seaman is ordered to complete a task in a specific manner. In *Alholm,* a seaman contended on appeal that, because he was following orders, the jury should not have been permitted to find him comparatively negligent or to consider whether there was a safe alternative course of action at the time of the incident. *Id.* Plaintiff argued that seamen cannot be comparatively negligent when following orders, citing two cases that quote the rule estab-

lished in *Williams: Burden v. Evansville Materials, Inc.,* 840 F.2d 343 (6th Cir. 1988), and *Hall v. American S.S. Co.,* 688 F.2d 1062 (6th Cir.1982). *Id.* The Eighth Circuit reasoned that "[t]he cited cases do not establish a blanket rule precluding a seaman from being found contributorily negligent when acting at the direction of a supervisor." *Id.* The court continued:

> The negligence of the worker and the possibility of a safe alternative may be considered when a seaman is ordered to do a task but is not instructed on the method to use and he acts negligently despite the availability of an alternative. *See Burden,* 840 F.2d at 346–48. A seaman cannot be found comparatively negligent, however, when following an order to complete a task in a specific manner. *Cf. Burden,* 840 F.2d at 346–47 (6th Cir.1988) (plaintiff comparatively negligent where he followed order to complete task but was negligent in failing to use a known safe technique); *Tolar v. Kinsman Marine Transit Co.,* 618 F.2d 1193, 1196 (6th Cir.1980) (no comparative negligence where seaman completed task in only way possible).

*Id.* The Eighth Circuit thus recognized a balance between encouraging reasonable care of seamen and requiring a high degree of seaworthiness and safety from ship owners and tipped the balance in favor of seamen who receive specific orders to do a task a specific way that yielded injury.

The Eighth Circuit's rule at first seems appealing because it recognizes the obvious limits on a seaman who receives a specific order to do a particular task in a particular manner; faced with such an order, a seaman cannot reasonably pause to investigate potential harms before carrying out the order. But the Eighth Circuit's rule does not go far enough because it fails to consider the effect of even a general order on a seaman. When given any order, a seaman might be aware of potential injury if the order is followed, but reasonably might sacrifice personal safety for the good of the ship or crew. An order given from superior to seaman on the open sea should constitute the result of the superior's consideration of risk to the seaman balanced against the value of the task to the safety and mission of all. It is more reasonable for a seaman to follow an order without assessing alternatives than to weigh alternatives beyond the immediate order. To assess alternatives is to second guess a superior's assessment of the situation. Disruption of the chain of command at sea, and delays by seamen in executing orders, may imperil crew and vessel.

We conclude that the Fifth Circuit's rule in *Williams* is persuasive, fair to crew and vessel owners alike. No ship departs for open seas leaving care behind, and no seaman passes from port to port without peril. Compliance with orders from supervisors will promote vessel safety and will aid efficacy of command at sea. We hold that a seaman may not be held contributorily negligent for carrying out orders that result in injury, even if the seaman recognizes possible danger and does not delay to consider a safer alternative. This, however, does not end our inquiry.

 Our adoption of the rule in *Williams* leads us to consider whether this rule against contributory negligence when a seamen follows an order also precludes contributory negligence when a seamen responds to an urgent, yet general, call to the crew for assistance. We hold that it does. In the worst case, one who hesitates at sea to aid a superior may cause dire loss to vessel or crew or both. A seaman cannot safely pause to assess the dangers of responding to an urgent, general call for help from a superior. An urgent call for help, like an order, should represent a

superior's assessment of hazards to vessel and crew in a perilous marine setting. Seamen who respond to a call for help, when the need may be urgent, must not be penalized. We hold that a seaman who responds to a superior's urgent call to the crew for help cannot be found contributorily negligent.[4]

The record demonstrates that Miller "hollered" for help from the crew and Simeonoff responded to help Miller at once and went beneath the crab launcher. In such circumstances, it is unfair to the seaman and unwise for the vessel to apply contributory negligence. We announce today an exception to our general rule. In view of this exception, the district court clearly erred by reducing Simeonoff's damages based on a finding of contributory negligence.

### Reviewability of economic damage awards

Simeonoff argues that the district court's lump sum economic damage awards are insufficiently detailed for review pursuant to Federal Rule of Civil Procedure 52.

▮ In bench trials, a court must "find the facts specially and state separately its conclusions of law thereon." Fed. R. Civ. Pro. 52(a).

> One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision. This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions. Failure to comply with Rule

52(a) does not require reversal unless a full understanding of the question is not possible without the aid of separate findings. We will affirm the district court if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision, or if there can be no genuine dispute about omitted findings. *Vance*, 789 F.2d at 792 (internal citations omitted).

The district court is not required to base its findings on each and every fact presented at trial. *Id.* (citation omitted). Conclusory and unhelpful findings of fact do not necessarily require reversal if the record supports the district court's ultimate conclusion. *See, e.g., Unt v. Aerospace Corp.*, 765 F.2d 1440, 1444 (9th Cir.1985).

▮ Lump sum damage awards are not per se insufficient under Rule 52(a). *See, e.g., Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1015 (9th Cir.1997); *Sines v. United States*, 430 F.2d 644, 645 (9th Cir.1970); *Gypsum Carrier, Inc. v. Handelsman*, 307 F.2d 525, 531–32 (9th Cir.1962). *See also* Charles A. Wright, Arthur R. Miller, 9A Fed. Prac. & Proc. Civ.2d § 2579 (West.1995) ("[a]ppellate courts, in examining a 'lump sum' damage award, should not adopt a per se rule that all cases must be remanded for compliance with Rule 52(a)"). Rather, we remand for further findings under Rule 52(a) when we cannot adequately resolve objections raised regarding validity of an award because the award is insufficiently detailed. *See, e.g., Carpenters Local 1273 v. Hill*, 398 F.2d 360, 363 (9th Cir.1968); *Daido Line v. Gonzalez, Corp.*, 299 F.2d

---

4. To preclude contributory negligence requires conduct in response to a particular call for help, and not merely work pursuant to the ordinary assignment of duties or a particular task. Otherwise the exception may swallow the rule. When a seaman completes an ordinary task at sea, even if requested by a superior, contributory negligence may mitigate damages if an injured seaman had alternatives available, and chose the unreasonable course in completing that task. *DuBose*, 403 F.2d at 878. We do not alter this general principle.

669, 676–77 (9th Cir.1962). *See also Neill v. Diamond M. Drilling Co.,* 426 F.2d 487, 491–92 (5th Cir.1970).

 Here, Simeonoff merely observes that (1) the district court's finding that past lost wages from February 1996 through trial amounted to $6,500, reduced for taxes, does not specify the years the loss occurred, how the loss was calculated or what tax rate applied; and (2) the court's finding that the reasonable value of Simeonoff's future lost wages, reduced to present value and adjusted for taxes of $130,000, does not provide a figure for uninjured earning capacity or residual earning capacity. However, the district court's findings of fact are adequately detailed to permit meaningful appellate review of any substantive challenge. Appellant's complaints on this issue fail because they are merely observations that the district court's award for past and future economic damages are lump sum awards.

Notably, in *Security Farms,* 124 F.3d at 1015, we reviewed and upheld lump sum damage awards similar to the awards challenged here. There, both parties at trial submitted expert testimony on the issue of lost profits. *Id.* One expert estimated zero lost profit, the other estimated over $3 million lost profit. *Id.* The district court rejected both estimates, observed that the actual amount of lost profits was difficult to determine, and set the award at $500,000. *Id.* The party who estimated a high profit loss challenged the damage award as arbitrary and insufficient. *Id.* The court disagreed. After noting that the district court was entitled to reject both experts' estimations, *id.,* the court stated:

An approximate determination where "the evidence shows the extent of damages a matter of just and reasonable inference" will be sustained. The court rejected Growers' theory of damages be-

cause it relied on an "extremely favorable market rate" and required every crop to be of "premium quality." It then awarded a fraction of Growers' proposal, presumably based on what it considered to be more realistic factors. We believe the district court's award to be a fair assessment of Growers' loss. We therefore affirm this portion of the award.

*Id.* (internal citations and footnotes omitted); *see also Williams v. Reading & Bates Drilling Co.,* 750 F.2d 487, 491–92 (5th Cir.1985) (damages award for Jones Act claim not clearly erroneous despite lack of detailed calculations in light of review of expert trial testimony, questions to the economist at trial and "the fact that the court's award [was] within the bounds estimated by the experts").

Here, the district court made detailed factual findings to support its economic damage awards. These included assessments of the injury's impact on Simeonoff's ability to crab and salmon fish; ability to fish in alternative fisheries that were previously unavailable to him because of an overlap in fishing seasons with crab and salmon fishing; and ability to participate in work unrelated to fishing.

The district court also assessed the economic experts' estimations of lost past and future economic damages. At trial, Simeonoff's economist estimated economic loss at $500,000. Hiners' economist estimated economic loss at zero. After considering the evidence, particularly the expert economists' testimony, the court found that neither expert "has presented an entirely reasonable assessment of plaintiff's past lost earnings and future loss of earnings." The court disregarded the expert's estimations and, after noting defendant's payments for maintenance, cure, unearned wages, and an advance payment for loss of the 1996 salmon season, found lost earn-

ings, reduced for taxes, to lie between the experts' estimates at $6,500 past lost wages and $130,000 future lost wages. The court awarded Simeonoff seventy percent of these damages.

We hold that the damage awards are sufficiently detailed to withstand appellant's Rule 52(a) challenge.

### Sufficiency of non-economic damage awards

■ Simeonoff argues that the district court clearly erred by awarding inadequate non-economic damages: $14,000 (seventy percent of $20,000) for past pain, suffering and loss of enjoyment of life and $4,900 (seventy percent of $7,000) for future pain, suffering and loss of enjoyment of life. We disagree. While, as discussed above, the reduction for contributory negligence was clear error, the district court's damages awards before reduction were sufficient.

■ The district court's computation of damages is a finding of fact we review for clear error. *Stephens v. City of Vista*, 994 F.2d 650, 655 (9th Cir.1993). If the district court's conclusion is "plausible in light of the record viewed in its entirety" then it is not clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We "will not disturb an award of damages unless it is 'clearly unsupported by the evidence,' or it 'shocks the conscience.'" *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 710 (9th Cir.1990) (citations omitted).

The district court's non-economic damages awards are not clearly erroneous in light of the record and the district court's factual findings. In favor of non-economic damages, the district court found that Simeonoff "was in considerable pain" when pinned beneath the launcher. The court also found that Simeonoff experienced pain both during the transport to the hospital and while undergoing two surgeries. Moreover, there was permanent impairment to Simeonoff's ability to enjoy life consisting of "a need to rest more frequently when engaging in strenuous activities such as hunting and hiking in steep country." Simeonoff had to reduce post-injury recreational bicycling. Simeonoff experiences some pain in his foot while ashore, requiring occasional pain-relief medication. Simeonoff has difficulty sleeping through the night and endures heightened pain while at sea. Simeonoff's foot will not improve and will probably get worse.

Also favoring non-economic damages, Simeonoff loved to crab fish, which he can no longer do. When the launcher crushed Simeonoff's foot, he remembers "screaming," and he was pinned under the launcher for two to four minutes. Then, the painful transport to shore took eighteen hours. Since the accident, Simeonoff's foot gets numb from cold. In rough weather, Simeonoff experiences "unbearable" pain like needles shooting through his foot and the inability to keep his balance. Simeonoff constantly has pain in his foot, and there has not been a day since the accident when his foot has not hurt. Simeonoff's wife testified that since the accident Simeonoff experiences frustration with his limitations. After the accident, the couple cannot do many things such as hiking, walking and biking to the extent they previously enjoyed.

Disfavoring non-economic damages, the district court found that Simeonoff is presently able to perform all the household services expected of a husband and father. The court also found that although Simeonoff experienced some reduction in recreational cycling post-injury, "there is no evidence of a present inability to enjoy

cycling." The court found that Simeonoff's main recreational interest is shooting and "[h]is shooting has not been impaired by the injury to his right foot." The court found that, while Simeonoff experiences some pain while ashore, "he goes for long periods without seeking medical care for the pain." The court found it more probable than not that Simeonoff will not require specific surgery at any particular time.

Also disfavoring non-economic damages, after the first surgery, the pain medication worked, Simeonoff "felt great," and he was released after two days. The hardware removal after the first surgery took between thirty minutes to an hour. While the pain increased before the second surgery, that surgery reduced the pain quite a bit, and Simeonoff became fairly comfortable walking with special boots. Simeonoff testified that the injury has little impact on his enjoyment of hunting, kayaking, playing with or parenting his children, cooking, shopping, or maintaining the car.

The court's non-economic damage awards are not inadequate. They are supported by the evidence and do not shock the conscience.

### Prejudgment interest

Simeonoff argues that the district court erred by denying prejudgment interest without making findings explaining the denial. Appellees argue that Simeonoff waived prejudgment interest by failing to comply with District of Alaska Local Rule 58.1(d).

We review a grant or denial of prejudgment interest for abuse of discretion. *Vance*, 789 F.2d at 794. In personal injury cases under admiralty jurisdiction, "prejudgment interest must be granted unless peculiar circumstances justify its denial." *Id.* at 795 (internal quotation marks and citations omitted). "When a district court fails to articulate any reason why prejudgment interest was denied, the district court abuses its discretion in refusing to award prejudgment interest." *Id.* at 794 (internal quotation marks and citation omitted).

Simeonoff requested prejudgment interest in his complaint. He later may or may not have waived that interest, as Appellees argue. However, we cannot determine the district court's reasoning for denying prejudgment interest because the court was silent regarding prejudgment interest in its findings and judgment, though Simeonoff was initially the prevailing party. The district court did not articulate reasons for denial of prejudgment interest. *Vance*, 789 F.2d at 794. While we do not consider the merits of Simeonoff's claim for prejudgment interest, we remand to the district court to articulate its reasons for denying that interest or to reconsider the issue as may be appropriate.

### CONCLUSION

We affirm the district court's findings regarding economic damages because the awards are sufficiently detailed for appellate review. We further affirm the district court's non-economic damage awards because the awards are sufficient. However, we reverse the district court's conclusion that the doctrine of contributory negligence applies to reduce Simeonoff's recovery of damages. We also remand for further findings regarding the denial of prejudgment interest. Appellant and appellee are responsible for their own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.