

NUMBER 13-10-00425-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KING FISHER MARINE SERVICE, L.P.,                    Appellant,

v.

JOSE H. TAMEZ,                    Appellee.

On appeal from the 103rd District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Vela, and Perkes**
**Memorandum Opinion by Justice Vela**

This appeal is from a trial court judgment awarding appellee, Jose H. Tamez, damages against appellant, King Fisher Marine Service, L.P. ("King Fisher") in a case involving Jones Act, unseaworthiness, and maintenance and cure claims. On appeal, King Fisher claims that: (1) there is legally and factually insufficient evidence to support

finding that Tamez was acting under specific orders at the time the incident occurred; (2) the trial court erred by rejecting King Fisher's proposed definition of "specific orders," which it claims is a technical term that serves to differentiate that type of order from "general orders"; and (3) the response to question three was immaterial due to the jury's answers to the contributory negligence questions. We affirm.

## I. BACKGROUND

Tamez sued King Fisher alleging that he was injured when he received an order from his supervisors to manually lift a piece of equipment. Tamez claimed that he suffered injuries while in the process of lifting certain equipment, which should have been lifted with mechanical assistance or with additional crew. In response, King Fisher asserted affirmative defenses, including contributory negligence. Tamez replied that the injury occurred at a time when he was carrying out "specific orders."

At the time the injuries allegedly occurred, Tamez was working aboard a dredging vessel called the LEONARD M. FISHER. He was assisting in the process of putting the cutterhead back on and attaching it to the dredge. The cutterhead is a device used to loosen material at the bottom of a channel. According to Tamez, the captain and another employee were having a difficult time removing the shaft and the socket. Tamez testified that the captain "yelled" out to him to help them quickly. Tamez said that he had a torch in his right hand and he immediately held the socket with his left hand, and when it fell, "it made like a bell and that was where I had the accident." Tamez testified that Captain Cordova "demanded, yelled out for me to help them fast because it was going to fall." He stated that he did not put the torch down before assisting them because he was told to

2

respond quickly. According to Tamez's testimony, he told the dredge's captain that he had been hurt. After the accident, Tamez left for a ten day vacation. When he returned he sought medical assistance.

Jorge Cordova, the dredge captain, testified that he needed Tamez's help to lift the socket portion of the shaft and wrench connection. He agreed that he ordered Tamez to come over and assist them because they needed help. He and an assistant, Mr. Delgado, could not handle the job on their own. According to Cordova, Tamez used both of his hands. Cordova stated that Tamez did not tell him he had been hurt until after Tamez returned from vacation. Cordova testified that he asked Tamez if he could handle the job he was being asked to do and Tamez confirmed that he could. When the socket came down, Tamez's arm went to the side and he said "ouch." Cordova said Tamez told him he was fine. According to Cordova, Tamez's sign out sheet denied that he had been hurt during the work shift. Cordova claimed he did not know Tamez had been hurt until June 2, 2008. In August 2008, Tamez quit. He then filed the lawsuit which is the basis for this appeal.

The jury found that: (1) the negligence of both parties caused Tamez's injuries; (2) each party was 50% responsible; (3) the unseaworthiness of the LEONARD M. FISHER proximately caused Tamez's injuries; and (4) Tamez was entitled to $420,000.00 as compensatory damages. The jury also found that Tamez was acting under specific orders at the time of the incident. Because of the answer to the "specific orders" question, the trial court did not reduce Tamez's damages by the percentage of his negligence.

3

## II. STANDARD OF REVIEW

The Jones Act provides a cause of action for maritime workers injured by an employer's negligence. 46 U.S.C.A. 30104 (West Supp. 2010)); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 405–06 (Tex. 1998). When a state court hears an admiralty case, that court occupies essentially the same position occupied by a federal court sitting in diversity: the state court must apply substantive federal maritime law but follow state procedure. *Id.* at 406. "Under the Federal Employers' Liability Act (FELA), a related statute, the causation burden is not the common law proximate cause standard." *Id.* Rather, the causation burden is "whether the proof justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury for which the claimant seeks damages." *Id.* The Jones Act expressly incorporates FELA and the case law developing that statute. *Id.* "Thus, the causation standard under the Jones Act is the same as that under FELA." *Id.*

Texas courts have recognized that both the burden of proof and the standard of appellate review in a Jones Act case are less stringent than under the common law. *See id.*; *Tex. & Pac. Ry. v. Roberts*, 481 S.W.2d 798, 800 (Tex. 1972). Also, FELA's standard of appellate review applies in Jones Act cases. *See Ellis*, 971 S.W.2d at 406. The purpose of the Jones Act standard of review is to vest the jury with complete discretion on factual issues about liability. *Id.* Once an appellate court determines that some evidence about which reasonable minds could differ supports the verdict, the appellate court's review is complete. *See id.* A Texas appellate court may not conduct a traditional factual sufficiency review of a jury's liability finding under the Texas "weight and

4

sufficiency" standard. *See Roberts*, 481 S.W.2d at 800. Rather, courts of appeals must apply the less stringent federal standard of review.

On the other hand, under the Texas legal sufficiency standard of review, we view the evidence in a light most favorable to the finding and indulge every reasonable inference to support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla of evidence exists "if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (*quoting Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

### III. ANALYSIS

### A. Sufficiency of the Evidence

King Fisher urges in its first issue that there is legally and factually insufficient evidence to support the jury's answer to question three that inquired if Tamez was acting under specific orders at the time the incident occurred on May 13, 2008. Notably, the trial court did not define what a specific order was and the absence of such an instruction is discussed in King Fisher's second issue. The jury answered the question affirmatively. King Fisher urges that the term "specific order" is a "phrase that serves to illustrate a careful and important legal distinction between, on one hand, being ordered to

5

perform a task in a specific way, and, on the other hand, having the ability to choose the manner of performance."

The Fifth Circuit addressed this issue in *Williams v. Brasea*, in which it stated that "a seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger." 497 F.2d 67, 73 (5th Cir. 1974). In *Williams*, the court concluded: "a seaman's duty to obey orders from his immediate supervisor overrides the postulate that the seaman must delay execution of the order until he makes a reasonable effort to be sure that following the order will not injure the superior who gave the order." *Id.* This Court adopted the Fifth Circuit's rule in *Tio Mario Inc. v. Matos*, 778 S.W.2d 529, 531 (Tex. App.—Corpus Christi 1989, writ denied). This Court opined that appellant was following the captain's specific order that he pick up equipment and tie up the line. *Id.*

In maritime law, comparative negligence bars an injured party from recovering damages sustained as a result of his own fault. *Simeonoff v. Hiner*, 249 F.3d 883, 889–90 (9th Cir. 2001). An exception to the doctrine of comparative negligence exists when a seaman is injured while following a specific order. *Id.* at 891. The Ninth Circuit has stated: "where a general order is given, an employee must use ordinary care in its execution, and the giving of the order does not affect the question whether the servant has been negligent in his manner of carrying it out, where there is a choice open to him." *Jenkins v. Union Pac. R.R. Co.*, 22 F.3d 206, 211 (9th Cir. 1994) (quoting *Atchison Topeka & Santa Fe Ry. Co. v. Seamas*, 201 F,2d 140, 144 (9th Cir. 1952)). In such cases, the plaintiff's actions are reviewable for contributory negligence.

6

King Fisher argues that the specific order exception requires a supervisor to order the seaman to perform a specific task in a particular way. *See Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1279 (3d Cir. 1995) (stating that when the employee is given a specific order—that is, where he or she is told to perform a specific task in a particular way "he is not contributorily negligent; rather his conduct falls under the abolished doctrine of assumption of risk."). In other words, when a plaintiff has no real choice, his recovery should not be reduced because he performed the task, regardless of whether the plaintiff acted reasonably or unreasonably. *Id.* But when the plaintiff has reasonable alternatives available to him, he must act reasonably in performing his job. *Id.* And if he acts unreasonably, he is answerable for contributory negligence*. Id.*

When a seaman is ordered to do a task but is not instructed on the method to use, and he acts negligently, the negligence and the availability of a safer alternative may be considered in determining contributory negligence. *Alholm v. Am. S.S. Co.*, 144 F.3d 1172, 1179 (8th Cir. 1998). In *Alholm*, the court stated that the trial court had properly instructed the jury that if the plaintiff had been ordered to handle the cable in a particular fashion and acted as ordered, it could not consider the plaintiff to be contributorily negligent. *Id.* If however, he had been directed to move the line but was not ordered to use a particular method, the jury could consider contributory negligence*. Id.*; *see also DuBose v. Matson Navigation Co.*, 403 F.2d 875, 877 (9th Cir. 1968) (stating that contributory negligence doctrine applies when alternative courses of action are available and the injured party chooses the unreasonable course).

7

Fairly recently, in a case in which the Texas Supreme Court has granted petition for review, the San Antonio court of appeals has applied the specific order exception and found that the trial court did not err in awarding the plaintiff seaman the full amount of damages found by the jury. *See Weeks Marine, Inc. v. Garza*, No.04-08-00660-CV, 2010 WL 1609694 (Tex. App.—San Antonio Apr. 21, 2010, pet. granted) (mem. op.).

While other courts' analyses of what constitutes a specific order are instructive, *Matos* is precedent in this Court. There, the plaintiff alleged that he was injured while he was following the captain's specific order that he pick up equipment and tie up the "lazy line" because they were going into port. *Matos,* 778 S.W.2d at 531. That order is no more detailed than the order issued by Captain Cordova in this case. The *Matos* jury, as did the jury here, found the plaintiff 50% responsible. The trial court, relying on the jury's finding as to the captain's specific order, awarded the plaintiff the full amount of damages. *Id.* This Court held that there was some evidence to show that the plaintiff was following specific orders at the time he was injured and affirmed the award of damages. *Id.* Recognizing *Williams,* this Court opined that a seaman cannot be contributorily negligent for carrying out orders, even if that individual recognizes possible danger. *Id.* This Court did not differentiate or define a general versus a specific order.

At trial, Tamez testified that Captain Cordova yelled at him to assist them. Tamez testified that he responded to Cordova's call for assistance and he had the torch in his right hand, so he used his left arm to help them. Likewise, Captain Cordova testified that he ordered Tamez to help them because they could not handle the job on their own and needed his assistance. The evidence was controverted by Cordova with respect to

8

whether the situation was as dire as Tamez testified and whether Tamez used one hand or two to assist the effort. However, the jury found that Tamez was following specific orders and there was evidence to support the finding. Following *Matos*, we hold that there was some evidence about which reasonable minds could differ supporting the verdict that Tamez was following a specific order. While there is nothing to suggest that Tamez was ordered to keep the torch in his hand while helping the others complete the task, there is evidence that Tamez was responding to a specific order for assistance in an emergency situation. Thus, we overrule issue one.

## B. Charge Error

By King Fisher's second issue, it argues that the trial court erred by rejecting its proposed definition of "specific orders." We review the trial court's decision with respect to the charge for abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). Trial courts have considerably more discretion in submitting jury instructions than in submitting jury questions. *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex. App.—Houston [14th Dist.] 1989, writ denied). The trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). To reverse a judgment based on a claimed error in the jury charge, a party also must show that the error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1); *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006).

The proposed definition was:

You will be asked a question as to whether Jose H. Tamez was working under specific orders on May 13, 2008 at the time of the incident. A

"specific order" is given when a seaman is told to perform a specific task in a particular way, or, in other words, the seaman has no real choice as to how to perform that task. If Jose Tamez has reasonable alternatives available to him, he is not acting under specific orders and must act reasonably in performing his job duties.

Tamez argues that King Fisher failed to preserve error because it did not timely present its proposed specific order instruction to the trial court. We agree. The trial court's docket control order in this case stated: "Each side shall submit its requested special issues at trial or immediately prior to trial," and "at the commencement of trial, each party should present their proposed charge of the court on computer disc, formatted on WordPerfect and/or Microsoft Word, to the court coordinator."

Prior to trial, Tamez submitted his proposed charge that included the specific order question the trial court ultimately included. King Fisher then submitted its proposed charge, which did not contain an instruction or definition defining the proposed definition of "specific order." King Fisher amended its proposed charge twice, yet neither amendment contained a definition or instruction to accompany the specific order question.

At the informal discussion about the charge, counsel for Tamez informed the trial court that his proposed specific order question was not a pattern jury charge, but was one that was submitted in a case in Rio Grande City and was affirmed by the San Antonio court of appeals. At the formal charge conference, King Fisher did not submit a proposed definition or instruction to accompany the specific order question. King Fisher's counsel objected to the specific order instruction on the basis that the evidence did not support it. Counsel argued that our opinion in *Matos* was incorrect and

10

improperly analyzed the *Williams* case, discussed earlier in this opinion.   King Fisher also objected that the instruction was an improper comment on the weight of the evidence.

It was not until the trial court was ready to bring in the jury to read the charge that King Fisher requested to submit its proposed instruction.   In response, Tamez argued that he did not have time to determine if the proposed instruction was in substantially correct form.   The trial court replied that it was going to reject the "specific orders" instruction "mainly because it's not timely.   I mean, we needed to have all this stuff done and in by yesterday."

Texas Rule of Civil Procedure 272 requires the trial court to allow counsel a reasonable time to inspect and raise objections to the charge.   Counsel for King Fisher argued that the proposed definition was timely because it was submitted to the trial court prior to the case going to the jury.   Tamez argues that it was within the trial court's discretion to deny the instruction.

A trial court is afforded great latitude in its control of trial proceedings.   The court must be free to exercise its discretion to maintain control of its docket, and appellate courts will not overturn the incidental rulings of a trial court.   *See Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982) (stating that at the trial court has wide discretion in managing its docket).   Trial courts have wide discretion in managing their dockets, and appellate courts will not interfere with the exercise of that discretion absent a showing of clear abuse.   *Clanton*, 639 S.W.2d at 931; *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (trial court has inherent power to control disposition of cases

11

"with economy of time and effort for itself, for counsel, and for litigants" (*quoting Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))). That discretion can be exercised through enforcement of a scheduling order. *See G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 542 (Tex. App.—Dallas 2005, no pet.); *Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 401 (Tex. App.—El Paso 2004, no pet.).

Here, the trial court had a scheduling order in place that established that the parties were to have their proposed charges ready prior to trial. The trial court had both an informal and formal charge conference at which it heard objections. King Fisher had ample opportunity to present its proposed instruction to the trial court, but did not. Under the circumstances, we cannot say that the trial court erred in refusing to include an instruction tendered minutes before the charge was to be read to the jury. We overrule issue two.

### C. Materiality of Question Three

King Fisher argues by its third issue that the jury's finding of contributory negligence in response to questions 1 and 4, and its finding that Tamez was contributorily negligent rendered question three, the "specific orders" question immaterial.

In *Williams*, the Fifth Circuit Court of Appeals held that a seaman cannot be contributorily negligent for carrying out orders, even if he recognizes possible danger. *Williams,* 497 F.2d at 73. This court, in *Matos*, awarded the plaintiff the full amount, even though he was found to be 50% at fault, because there was some evidence to show he was following specific orders at the time of his injuries. *See Matos*, 778 S.W.2d at 531. Thus, following precedent from this Court, we overrule King Fisher's third issue.

12

## IV. CONCLUSION

Having overruled each of King Fisher's issues, we affirm the judgment of the trial court.

ROSE VELA
Justice

Delivered and filed the
31st day of May, 2012.

13