NOT FOR PUBLICATION

FILED

AUG 27 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>VICTORIA MARIE COOPMAN,<br><br>                    Debtor. | BAP No. CC-24-1053-CLF<br><br>Bk. No. 6:21-bk-13994-MH |
| VICTORIA MARIE COOPMAN,<br>                    Appellant,<br>v.<br>CAPFLOW FUNDING GROUP<br>MANAGERS LLC,<br>                    Appellee. | Adv. No. 6:21-ap-01118-MH<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

Before: CORBIT, LAFFERTY, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor, Victoria Marie Coopman ("Coopman") appeals

the bankruptcy court's order determining that the debt she owes to creditor

CapFlow Funding Group Managers LLC ("CapFlow") is nondischargeable

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

pursuant to § 523(a)(2)(A) and (a)(6) in the amount of $756,434.27. Because we discern no error, we AFFIRM.

## FACTS[2]

Innovation Pet, Inc. ("Innovation Pet"), founded in 2012, was a designer and seller of pet products including chicken coops, food and food dispensers, and dietary supplements. Coopman was the CEO of Innovation Pet and owned a 36.5% share of the company.[3] CapFlow provides commercial financing to businesses through factoring agreements. CapFlow purchases a company's future receivables at a discount from face value for an agreed, fixed amount.

On December 21, 2015, CapFlow and Coopman, on behalf of Innovation Pet, executed a factoring agreement, a security agreement, a purchase order assignment agreement, and a personal guaranty (collectively, the "Agreements"). Pursuant to the Agreements, Innovation Pet sold certain invoices (future receivables) to CapFlow, and in exchange CapFlow advanced 80% of the invoice amount to Innovation Pet. In October 2016, Innovation Pet began selling Tractor Supply Co.'s ("Tractor Supply") invoices to CapFlow. Coopman notified Tractor Supply of the

---

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] The other owners were: Timothy S. Taft, executive vice president, with a 36.5% share; Raymon and Antoinette Clubb with a combined 10% share; Justin and Teri Jones each with a 7.5% share; and Andrea Farber with a 2% share.

arrangement through a "Notice of Assignment" which directed Tractor Supply to remit all future payments ("Invoice Payments") to CapFlow's First Republic Bank account ("CapFlow's Bank Account"). Tractor Supply was also notified that the assignment was irrevocable and that any changes could only be initiated by CapFlow, not Innovation Pet.

From October 2016 through August 2019, Tractor Supply deposited all Invoice Payments to CapFlow's Bank Account. However, in August 2019, Coopman, without notice to or agreement from CapFlow, executed a "New Funds Transfer Agreement" with Tractor Supply. The New Funds Transfer Agreement instructed Tractor Supply to remit all future Invoice Payments to Innovation Pet's Pacific Premiere Bank account ("Innovation Pet's Bank Account") rather than CapFlow's Bank Account.

CapFlow was initially unaware of the New Funds Transfer Agreement and continued providing Innovation Pet factor financing. CapFlow soon noticed Tractor Supply's growing unpaid balance. CapFlow sought an explanation from Coopman regarding the short payments on Tractor Supply's invoices. During that exchange Coopman did not disclose that Tractor Supply was depositing Invoice Payments to Innovation Pet's Bank Account pursuant to the New Funds Transfer Agreement. Instead, Coopman's responses were evasive, indicating that she was similarly confused and was "requesting more back up" from Tractor Supply.

CapFlow was eventually able to access Tractor Supply's online portal which contained detailed information regarding Innovation Pet's invoices

and associated payments on those invoices. CapFlow discovered that Tractor Supply had been paying the invoices, but the payments were being deposited to Innovation Pet's Bank Account rather than CapFlow's Bank Account ("Misdirected Payments"). CapFlow also discovered Coopman's execution of the New Funds Transfer Agreement.

At CapFlow's direction, Coopman executed a corrected notice of assignment, which once again directed Tractor Supply to remit Invoice Payments to CapFlow's Bank Account. Innovation Pet received three additional Invoice Payments from Tractor Supply before the routing was changed back to CapFlow's Bank Account. The total amount of Misdirected Payments was $756,434.27[4] ("Total Misdirected Payments"). On May 12, 2020, CapFlow formally declared that Innovation Pet was in default and stopped providing factor financing.

On November 19, 2020, Innovation Pet filed a chapter 11 bankruptcy petition. After a sale of substantially all of Innovation Pet's assets, the bankruptcy case was converted to chapter 7.

Thereafter, Coopman, in her individual capacity, filed the underlying petition for relief under chapter 7. CapFlow filed an adversary complaint ("Complaint"), requesting that Coopman's debt to CapFlow be declared nondischargeable pursuant to § 523(a)(2)(A) and (a)(6), and that Coopman

---

[4] The parties stipulated to a slightly different amount ($756,707.27) both in their pretrial stipulation and during the trial, but the bankruptcy court alerted the parties that this number was incorrect due to a typographical error and the mathematical total was in fact $756,434.27.

be denied a discharge pursuant to § 727(a)(3) and (a)(4).

After a two-day trial and following post-trial briefing, the bankruptcy court issued a memorandum decision and a judgment (together, the "Decision") determining that Coopman's debt to CapFlow was $756,434.27 (the amount of the Total Misdirected Payments) and that the debt was nondischargeable pursuant to § 523(a)(2)(A) and (a)(6). The bankruptcy court held that CapFlow failed to establish that Coopman should be denied a discharge pursuant to § 727(a)(3) or (a)(4).

Coopman timely appealed the Decision.

## JURISDICTION

The bankruptcy court had subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.    Whether the bankruptcy court violated Coopman's due process rights by awarding damages in the amount of $756,434.27.

2.    Whether the bankruptcy court's determination of the amount of CapFlow's damages was error.

## STANDARDS OF REVIEW

"Whether an appellant's due process rights were violated is a question of law we review de novo." *DeLuca v. Seare (In re Seare)*, 515 B.R. 599, 615 (9th Cir. BAP 2014). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

5

The bankruptcy court's "computation of damages is a finding of fact we review for clear error." *Simeonoff v. Hiner*, 249 F.3d 883, 893 (9th Cir. 2001). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). We do "not disturb an award of damages unless it is 'clearly unsupported by the evidence,' or it 'shocks the conscience.'" *Simeonoff*, 249 F.3d at 893 (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 710 (9th Cir. 1990)).

## DISCUSSION

### A. The bankruptcy court did not err in liquidating the amount of damages within the context of the nondischargeability proceeding.

"Actions seeking a determination that a debt is not dischargeable in bankruptcy are core proceedings." *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1017 (9th Cir. 1997) (citing 28 U.S.C. § 157(b)(2)(I)). A bankruptcy court acts within its jurisdiction in liquidating a creditor's claim in conjunction with nondischargeability proceedings. *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1047-50 (9th Cir. 2014). Indeed, "exceptions to discharge and liquidations of related claims are examples of the bankruptcy courts doing what they are supposed to do." *Id.* at 1050. That is exactly what the bankruptcy court did in the present case: the bankruptcy

6

court entered a final judgment determining both the amount of CapFlow's damage claims against Coopman and the dischargeability of those claims.

On appeal, Coopman does not challenge the bankruptcy court's factual findings, nor does she dispute that the bankruptcy court's factual findings support the bankruptcy court's determination that the subject debt is nondischargeable pursuant to § 523(a)(2)(A) and (a)(6). Coopman's appeal focuses exclusively on the bankruptcy court's determination as to the amount of CapFlow's damages.

Coopman argues that the Decision was based on a new claim and that this violated her due process rights. Coopman bases her argument on the illogical premise that because the amount of damages argued by CapFlow at trial and in its proof of claim was different from the amount of damages awarded by the bankruptcy court, the bankruptcy court must have decided the damages based on an unpled claim.

Coopman's argument is without merit. The fact that the bankruptcy court ultimately awarded a different amount of damages is not indicative of an error by the bankruptcy court. Nothing in the Code prevents bankruptcy courts from liquidating damages, and nothing in the record reflects that the bankruptcy court's calculation was illogical, implausible, or without support in the record.

"Due process requires notice and an opportunity to be heard." *Carpenter v. Mineta*, 432 F.3d 1029, 1036 (9th Cir.2005) To support her due process claim, Coopman needed to establish both a denial of a full and fair

7

opportunity to be heard and that she was prejudiced as a result. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776-77 (9th Cir. 2008), *partially abrogated on other grounds as recognized by Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021). Coopman fails to establish either prong.

First, Coopman had ample notice of the claims, and the record demonstrates that the bankruptcy court did not preclude Coopman from testifying or introducing evidence. The Complaint alleged that Coopman owed a debt to CapFlow and that the debt was nondischargeable because Coopman engaged in fraud and willfully and maliciously caused CapFlow injury by intentionally misdirecting the Invoice Payments. Based on the alleged facts, CapFlow sought a determination that "Debtor's debt to Plaintiff" was nondischargeable pursuant to § 523(a)(2)(A) and (a)(6). Although CapFlow did not plead a specific amount of damages, Coopman was on notice that CapFlow was asking the bankruptcy court to both liquidate the amount of Coopman's debt and declare it nondischargeable.

Thus, the Complaint "contain[ed] sufficient allegations of underlying facts to give fair notice and to enable . . . [Coopman] to defend [her]self effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Furthermore, a review of the record demonstrates that Coopman had the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Indeed, the testimony at trial (including Coopman's) focused

specifically on establishing the amount of Coopman's debt to CapFlow. Both parties testified about their accounting practices and elicited testimony regarding Coopman's knowledge regarding the Agreements, the notices of assignments, and her knowledge and intentions related to the Misdirected Payments.

Although the facts underlying the issue of liability were straightforward, testimony as to the amount of the damages was less clear. The evidentiary problems included imprecise and uncertain testimony from both parties[5]; a lack of clarity about CapFlow's factor financing procedures[6]; and the lack of documentary evidence related to the timing of CapFlow's discovery of the Misdirected Payments and CapFlow's application of various types of payments to specific factored invoices.[7] Additionally, CapFlow conceded that it did not have a witness who could testify to the accuracy of the amounts included in its proof of claim.

Coopman's testimony was also unclear, imprecise, and uncorroborated. Coopman testified that she did not look at her bank

---

[5] Witness testimony was equivocal and couched with "I think" over 113 times and "I believe" over 140 times.

[6] Although Tractor Supply was directed to deposit all Invoice Payments into CapFlow's Bank Account, not all of the invoices were factored. CapFlow failed to provide clear testimony or evidence about its process and timing in applying payments to factored invoices, or its process for identifying and separating unfactored invoices. Additionally, CapFlow did not separate Tractor Supply's unfactored collections from other account debtors' payments.

[7] If there were short pays from Tractor Supply, CapFlow could at its discretion make up the shortfall by applying future advances, rebates, or unfactored payments.

statements on a regular basis and guessed at her process for identifying the invoice related to a factored payment. Although Coopman alleged that CapFlow was still holding $386,000 in non-factored receivables and that Innovation Pet had a cause of action against CapFlow in the amount of $405,883 for payments Innovation Pet made to CapFlow during Innovation Pet's bankruptcy, Coopman admitted that she had no admissible evidence to support such claims.

At the end of the trial, the bankruptcy court stated it lacked a "firm understanding" of the accounting related to Innovation Pet's factor account. Accordingly, the bankruptcy court allowed, but did not require, post-trial briefing on the amount of damages, stating:

> [A]ssuming I do find liability, damages. The -- I don't think it's an understatement to say the factual record is a bit convoluted as to the nature of the transactions that went on and that's, you know -- that's shared -- from my perspective, it's shared on both parts.
>
> I do not have a firm understanding of, you know -- the communication record is -- appears somewhat skeletal, as well as the nature of the transactions. I don't want to put too much of a characterization on it at this point, but suffice it to say, there appears to be confusion. Maybe that was intentional on some parts. Maybe it was caused by delay -- delay in following up, things like that.
>
> But so as to damages, as I sit here right now, again, assuming I find liability, the damages are the -- is the $756,000. I don't have -- I don't believe plaintiff has established that the proof of claim

amount [$957,713.99] is the appropriate damage award and I
don't feel, from the record, that the defendant has established
that there were -- that there are credits or set offs or recoupment
or whatever you want to call it to that 756,000.

So to be clear, I'm not opening the record up for any more
evidence. The evidence is over. But if the parties want the
opportunity to address that, I -- I candidly question whether
either party would be able to based on the evidence before the
Court, but that is a question for me.

Assuming I do find that there was liability, again, it would -- it
would -- assuming I do find liability, then the only damage
award that seems supported by the record is the 756,000.

So with that, if the parties want the opportunity to provide post
-- post-trial briefs on that, I'm happy to take a look at that
before our continued hearing or I issue a ruling.

Hr'g Tr., 170:3-171:13, Sept. 20, 2023.

This record reveals that Coopman was aware that the bankruptcy
court was considering the Total Misdirected Payments as the amount of
damages based on the admissible evidence. It is also clear that the
bankruptcy court's determination of damages was related to the claims
CapFlow pled in its Complaint and argued at trial. The court rejected both
CapFlow's argument that the damages exceeded this amount and
Coopman's argument that the damages should be less. The court also
found each party's post-trial briefing unhelpful and did not change the
bankruptcy court's initial determination. Due process was satisfied;

Coopman had notice of the claims and was given ample opportunity to testify and introduce evidence in her defense.

Second, even if Coopman could demonstrate a denial of due process, she cannot establish she was prejudiced. Coopman fails to demonstrate that she would have presented any different or additional arguments that would have changed the bankruptcy court's calculation of damages. *See City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 959 (9th Cir. 1994) (rejecting due process claim for lack of prejudice where debtor could not show any different or additional arguments would have been presented).

## B. The bankruptcy court's determination of the amount of CapFlow's damages was supported by the record.

Coopman also makes a cursory assertion that the amount of damages determined by the bankruptcy court was not supported by the evidence. Coopman's assertion is both legally and factually unsupported.

Under California law, the "out-of-pocket" measure of damages is applicable to torts. *Kenly v. Ukegawa*, 16 Cal. App. 4th 49, 54 (1993); *see also All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995) ("out-of-pocket" measure of damages applies to fraud claims); *Ward v. Taggart*, 51 Cal. 2d 736, 741 (1959) ("In the absence of a fiduciary relationship, recovery in a tort action for fraud is limited to the actual damages suffered by the plaintiff."). "The 'out-of-pocket' measure of damages 'is directed to restoring the plaintiff to the financial position enjoyed by him prior to the

12

fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received.'" *All. Mortg. Co.*, 10 Cal. 4th at 1240 (quoting *Stout v. Turney*, 22 Cal. 3d 718, 725 (1978)).

Because the amount of damages is a factual question, we may reverse only if we conclude that the bankruptcy court's finding was illogical, implausible, or without support in the record. Here, the bankruptcy court held that Coopman's liability was equal to the Invoice Payments that Coopman intentionally misdirected. Coopman fails to direct the Panel to any credible evidence demonstrating that this amount was based on the bankruptcy court's incorrect application of law or on erroneous factual findings. Because the bankruptcy court applied the proper measure of damages under California law and its factual findings were supported by the record, the bankruptcy court did not err in determining that the damages equaled the amount of the Total Misdirected Payments.

## CONCLUSION

For the reasons set forth above, we AFFIRM.