**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )       BAP No. EC-14-1219-JuKuPa
                                    )
YOUSIF H. HALLOUM,                  )       Bk. No.  12-21477-CMK
                                    )
                Debtor.             )
_____ )
                                    )
YOUSIF H. HALLOUM,                  )
                                    )
                Appellant,          )
                                    )
v.                                  )
                                    )       M E M O R A N D U M*
MCCORMICK, BARSTOW, SHEPPARD,       )
WAYTE & CARRUTH LLP; HILTON         )
A. RYDER; MICHAEL G. KASOLAS,       )
Trustee,                            )
                                    )
                Appellees.          )
_____ )

Submitted Without Oral Argument
on May 14, 2015

Filed - May 19, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Chief Bankruptcy Judge,
Presiding

_____

Appearances:    Yousif H. Halloum on brief pro se; Scott M.
                Reddie and Hilton A. Ryder of McCormick
                Barstow LLP on brief for appellees McCormick,
                Barstow, Sheppard, Wayte & Carruth LLP and Hilton
                A. Ryder.**

_____

* This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

** Michael G. Kasolas, Trustee did not file a brief.

-1-

Before:  JURY, KURTZ, and PAPPAS, Bankruptcy Judges.

Chapter 7[1] debtor, Yousif H. Halloum,[2] appeals from an order granting the motion for chapter 11 administrative expenses filed by his former attorney, Hilton A. Ryder (Ryder).  We VACATE and REMAND for lack of adequate findings under Rule 7052.

## I.   FACTS[3]

### A.   Prepetition Events

Beginning in 2005, the predecessor-in-interest to Midwest Bank N.A. (Bank) made secured loans to debtor.  The loans were secured by debtor's real and personal property.  Debtor operated an ARCO gas station and convenience store on the real property located in Lodi, California (Real Property).  Debtor also had his business checking account with Bank.

In late 2010 and thereafter, debtor overdrew his checking account with Bank.  Although debtor said the overdrafts would be repaid in the near term and Bank prodded him to do so, the amount due increased over time.  In October 2011, Bank advised debtor he had ten days to establish alternative banking

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Debtor is also known as Joe Halloum.

[3] To the extent needed, we take judicial notice of various pleadings which were docketed and imaged by the bankruptcy court in the underlying bankruptcy case. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

relationships for his business, no further overdrafts would be honored after the ten days, and that no overdraft would be honored in the interim if the cumulative total exceeded $300,000. During this ten-day cautionary period, debtor took advantage of Bank's accommodation to boost the overdrafts from approximately $190,000 to $297,372.49.

Around this time, debtor also defaulted under the loans. On October 12, 2011, Bank recorded a notice of default that commenced nonjudicial foreclosure as to the Real Property. On January 20, 2012, a notice of trustee's sale under the trust deed was recorded.

Bank also sued debtor and his wife in the San Joaquin County Superior Court to recover on the $297,372.49 overdraft. Debtor and his wife cross-complained against Bank, alleging breach of a contract to transform the overdraft into some unspecified term loan. The Bank's demurrer to the cross complaint was stayed by the bankruptcy filing.

**B. Bankruptcy Events**

Debtor filed a chapter 11 petition on January 26, 2012. The Disclosure of Compensation of Attorney for Debtor form attached to the petition stated in relevant part:

> For legal services, I have agreed to accept $38,954.00.
>
> Prior to the filing of this statement I have received $38,954.00.

The form goes on to state that in return for the above-disclosed fee, "I have agreed to render legal service for all aspects of the bankruptcy case, including: representation of the debtor in adversary proceedings and other contested bankruptcy matters."

-3-

The form was signed by Ryder, a partner with the law firm McCormick, Barstow, Sheppard, Wayte & Carruth LLP (MBSWC).

On February 10, 2012, debtor filed an application to employ MBSWC as bankruptcy counsel. The application did not mention a flat fee arrangement. A few days later, the bankruptcy court approved MBSWC's employment by entering an order which stated in relevant part:

> Compensation will be at the 'lodestar rate' at the time that services are rendered in accordance with the Ninth Circuit decision in In re Manoa Fin. Co., 853 F.2d 687 (9th Cir. 1988). No hourly rate referred to in the application is approved unless unambiguously so stated in this order or in a subsequent order of this court.

MBSWC submitted applications for payment of interim fees and expenses on May 2, June 27, September 6, 2012, and January 31 and May 28, 2013. Each fee application was accompanied by a declaration signed by debtor declaring that he had reviewed the application and that he approved the fees and expenses as set forth in the application and attached exhibits. By the time MBSWC submitted the May 28, 2013 application, debtor had approved fees incurred by MBSWC totaling $116,067.

MBSWC also submitted an application for payment of interim fees and expenses on October 8, 2013. Debtor refused to provide a declaration approving the fees, contending that Ryder agreed to represent him in the chapter 11 case for a flat fee of $40,000. MBSWC later withdrew this application.

On November 7, 2013, the bankruptcy court issued an Order To Show Cause Why a Chapter 11 Trustee Should Not Be Appointed. Apparently, debtor was unable to negotiate a consensual plan with Bank and had also used Bank's cash collateral without

-4-

making adequate protection payments. On November 22, 2013, the bankruptcy court appointed Michael G. Kasolas as the chapter 11 trustee (Trustee) to assist the court in evaluating the feasibility of plan confirmation and related issues.

Bank then filed a motion to convert the case to chapter 7. Bank noted that, although it attempted a constructive global resolution with debtor, it would not agree to an ongoing business relationship with him for various reasons and that it would vote against any plan.

On January 17, 2014, Trustee's counsel sent an e-mail to MBSWC stating:

> The Trustee will support a plan that contains the following. Other issues may develop, but these are the essentials for the Trustee's support.
>
> First, Joe [Halloum] must have deposited $200,000 to cover the accrued administrative fees at the time of the confirmation hearing. These funds can be held in your trust account or held by the Trustee. These funds cannot be held by Joe.
>
> Second, Joe must acknowledge your fees and waive any objection to your fees. You have done an excellent job, and Joe only raises this issue when he feels it essential to create more available funds for his business. Joe cannot attack his own lawyer at the same time he wants that same lawyer to commit himself 100% to confirming a plan of reorganization. This behavior is irrational, upsets the Judge and must stop.

On February 7, 2014, MBSWC substituted out of the chapter 11 case. On the same date, Trustee filed a status report. There, Trustee opined that debtor would not be able to confirm a plan over the objection of Bank and further said:

> Moreover, the Trustee is at a complete loss to understand the Debtor's actions. Mr. Ryder has done an extraordinary job of representing the Debtor in this case, including negotiating exceptionally debtor-friendly treatment under the proposed Plan:

-5-

eliminating more than $1 million in unsecured claims and stretching out the payment terms for Arco and the taxing authorities. Mr. Ryder was also integral to the efforts to seek a solution with the Bank, which not long ago was simply insisting that the case be converted because they refused to continue to deal with the Debtor. Notwithstanding these efforts, the Debtor has sought an eleventh-hour substitution of counsel raising the entirely specious claim that the initial disclosure of compensation in the case amounts to Mr. Ryder's agreement to perform all services required in the case in exchange for the retainer and nothing more. These mystifying claims have been raised before and completely ignore the fact that the Court has awarded additional compensation on multiple occasions in the case.

In a declaration filed in support of an application to employ his new counsel, Daniel Weiss, debtor contended that MBSWC did not adequately represent him in the case and had agreed to handle the entire bankruptcy case for a flat fee of $40,000. Debtor sought to recoup the fees over the $40,000 amount. MBSWC denied that there was any such flat fee agreement.

On February 12, 2014, debtor's case was converted to chapter 7. Kasolas was appointed the chapter 7 trustee.

On March 4, 2014, MBSWC filed a motion seeking final compensation for its work in the chapter 11 case. MBSWC requested final compensation in the amount of $114,004.50 and expenses of $2,892.56, and requested $27,383.32 which had been held back in the prior five fee applications. In addition, MBSWC asserted that debtor's claim against it for recoupment was a compulsory counter-claim that belonged to Trustee.

On April 1, 2014, debtor filed an opposition to the motion, arguing that there was never any discussion between Ryder and himself about hourly rates and no written fee agreement was

-6-

presented or signed by him. Debtor maintained that under California law, Ryder must disclose the fees that he would be charging debtor and that if the total fee is over $1,000, then there must be a written fee contract. Debtor also asserted that Ryder agreed to perform the services listed in the Disclosure Of Compensation for $38,964 ($40,000 less the filing fee). Debtor alleged that approximately three months post-petition, contrary to their agreement, Ryder began billing debtor on an hourly basis. According to debtor, after he confronted Ryder about their flat fee arrangement, Ryder warned him verbally and in writing that if he refused to pay the legal fees, Ryder would withdraw from the case and the case may be converted to chapter 7. Debtor maintained that he "had no choice" but to pay Ryder to avoid losing his business. Debtor also asserted that Ryder did not adequately represent debtor's interest in negotiating approval of a chapter 11 plan. Debtor attributed the conversion of the case and the loss of his business to Ryder's actions or inactions. In the end, debtor requested the court to hold an evidentiary hearing on his counterclaim for recoupment of fees.

In reply, MBSWC argued that debtor did not have standing to oppose the motion since if disgorgement were ordered the monies would be paid to the chapter 7 estate. MBSWC also noted that Trustee was made aware of the fee dispute and made a decision to not pursue disgorgement from MBSWC. MBSWC again denied that there was ever an agreement for a flat fee and argued that such an agreement was inconsistent with debtor's conduct throughout the case, i.e., debtor signed a total of five disclosure

-7-

statements, none of which ever mentioned the professional fees being subject to a flat fee of $40,000 and debtor approved fee applications in excess of the initial retainer on five separate occasions in his capacity as debtor-in-possession. Finally, MBSWC asserted that under California law, even without a retention agreement, Ryder was entitled to fees and expenses on a quantum meruit basis. Accordingly, the bankruptcy court could decide the value of Ryder's services.

On April 15, 2014, the bankruptcy court heard the matter.

On April 16, 2014, the bankruptcy court entered the order granting the motion. The order did not contain any findings of fact or conclusions of law and simply noted that the amount requested was appropriate.

On April 28, 2014, debtor filed a timely notice of appeal.

On April 2, 2015, the Clerk's office issued an Order Re Transcript, which noted that the transcript for the April 15, 2014 hearing on the motion for administrative fees was never prepared and filed with the bankruptcy court. The order gave debtor until Thursday, April 16, 2015, to file and serve a copy of the transcript and further stated:

> If appellant does not provide the transcript, the Panel is entitled to assume that appellant does not believe there is anything in the transcript that will help appellant's appeal and may dismiss the appeal or summarily affirm the order on appeal. State of Cal. v. Yun (In re Yun), 476 B.R. 243 (9th Cir. BAP 2012).

Debtor filed the transcript almost a month after the due date, explaining that he had just received the Clerk's Order because he had moved and it was forwarded to his new address. Generally, "[a]lthough civil litigants who represent themselves

-8-

("pro se") benefit from various procedural protections not otherwise afforded to the attorney-represented litigant . . . pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994).  Nonetheless, we exercise our discretion to consider the late-filed transcript.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Whether the bankruptcy court made sufficient findings of fact and conclusions of law to allow for meaningful review of this appeal.

## IV.  STANDARD OF REVIEW

The bankruptcy court's approval of administrative expenses and award of attorney's fees is reviewed for abuse of discretion.  Hale v. U.S. Tr., 509 F.3d 1139, 1146 (9th Cir. 2007); Film Ventures Int'l, Inc. v. Asher (In re Film Ventures Int'l, Inc.), 75 B.R. 250, 253 (9th Cir. BAP 1987).   The bankruptcy court abuses its discretion when it fails to identify and apply "the correct legal rule to the relief requested," United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir.2009) (en banc), or if its application of the correct legal standard was "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. at 1262.

## V. DISCUSSION

Because it was opposed, MBSWC's motion seeking final compensation for its work was a contested matter subject to Rule 9014. As a contested matter, the bankruptcy court was required to make findings of fact, either orally on the record or in a written decision. See Rule 9014(c) (incorporating Rule 7052, which in turn incorporates Civil Rule 52); Harris v. U.S. Tr. (In re Harris), 279 B.R. 254, 260 (9th Cir. BAP 2002) (in contested matters the bankruptcy court is required to make findings on disputed issues of material fact). In an action tried on the facts without a jury, "the court must find the facts specially and state its conclusions of law separately." Civil Rule 52(a)(1), incorporated by Rule 7052. These findings must be sufficient to indicate the factual basis for the court's ultimate conclusion. Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985). Moreover, the findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision. Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 815 (9th Cir. 2003); Unt, 765 F.2d at 1444; Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919 (9th Cir. BAP 2011).

Debtor raised a number of issues in the bankruptcy court related to the fee application, including his contention that Ryder agreed to represent him in his chapter 11 case for a flat fee of $40,000. The alleged existence of such an agreement raised a factual question which the bankruptcy court would

-10-

resolve presumably by weighing the conflicting evidence and making credibility determinations.

A review of the transcript from the fee dispute hearing reflects that the bankruptcy court did not articulate any findings or conclusions on the record regarding the alleged agreement nor did it say that it was awarding the fees under § 330 or some other theory such as quantum meruit. See Hensley v. Eckerhart, 461 U.S. 525, 437 (1983) (trial court must provide a "concise but clear explanation of its reasons for the fee award."). Likewise, the order on appeal provides no inkling of how the bankruptcy court resolved the factual dispute regarding the flat fee agreement or why it determined that the fees requested were reasonable.

However, even when a bankruptcy court does not make formal findings, we may conduct appellate review "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." In re Veal, 450 B.R. at 919–20 (citations omitted). As there is a genuine dispute about the omitted findings, we have no basis for evaluating whether the bankruptcy court abused its discretion in awarding MBSWC the full amount requested in its final fee application.

## VI. CONCLUSION

Accordingly, we VACATE the order and REMAND to the bankruptcy court to make the required findings. See United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005).